## CRAWFORD COUNTY v. IOWA COUNTY.

1. COUNTIES ATTACHED FOR JUDICIAL PURPOSES—LIABILITY FOR COURT EXPENSES.—Two counties were attached for judicial purposes under a statute providing that certain courts should be held exclusively in a particular one of these counties. but no provision was made relating to the expense of holding such courts by the two counties, but it had been currently paid by the county in which they were held:   *Held*, that the non-paying county could not be compelled, in the absence of any statute provision, to contribute to, or pay any part of such expense, unless by some act of consent it had created some duty or obligation to do so.   2. It is a fair presumption, in the absence of statutory provision to the contrary, that it was the duty of the county in which the courts were held, to pay the expenses as an equivalent for the advantage of having them held within its limits, and for the disadvantage arising to the other county by its citizens being compelled to go abroad to transact judicial business.
2. LIMITATIONS.—The statute of limitations is equally applicable to suits in equity as to suits at law.

(2 *Chand.* 14.)

APPEAL from the District Court for *Crawford* County.

This was a suit instituted in equity, by the board of county commissioners of *Iowa* county, as the legal representatives of

*Iowa* county while it was in the territory of Michigan, against the board of county commissioners of *Crawford* county, as the legal representatives and successors of *Crawford* county of Michigan territory.

The bill sets up, substantially the following facts : 1. That in the year 1830, the counties of *Iowa* and *Crawford* were, by an act of Michigan, attached for judicial purposes.    2. That under such act the judiciary of said counties was organized, and courts held in *Iowa* county, "though said counties had a separate existence for all purposes except circuit and county court purposes."    3. That such counties remained so attached from the spring of 1830 to July, 1836, during which time terms of the circuit court were held.    4. That from the spring of 1830 to July, 1836, as many as two terms of the circuit court were held for such counties, continuing on an average for ten days each, and that large sums of money were expended therefor, many indictments found and tried, the expense of which had to be borne by *Iowa* county ; that the two counties, from the spring of 1830 to July, 1836, had but one sheriff, clerk or coroner attached to the circuit court, but had many other officers in common ; that but one grand jury was summoned at each term to inquire for both counties on the territorial side of the court, and that the fees, charges, etc., were charged to both counties jointly, an equal share to each ; that each county had a separate government and organization, as far as revenue was concerned, and each county assessed and collected its own revenue, and there was no common fund between them, out of which any joint indebtedness could be paid ; that for the whole period, from the spring of 1830 to July, 1836, the courts were filled with civil and criminal business, and that an equal amount if not a majority of such business came from *Crawford* county, especially that of a criminal character, and the length of the terms were materially extended in consequence of the business coming from *Crawford* county, and that the terms of the courts were mainly held for

*Crawford* county; that all the expenses incurred by the counties jointly were defrayed by the county of *Iowa;* that that county was compelled to adopt such course or permit such expenses to go unpaid; that the sum so paid as aforesaid amounted in the whole to $7,139.06, a bill of the particulars of which was appended to the bill of complaint; that the county of *Crawford* had paid no part or share of such expenses so paid by *Iowa*, and the complainants set up an indebtedness against the county of *Crawford* to the amount of one-half of the sum alleged to have been paid as aforesaid, and pray that said county may be decreed to pay the one-half of that sum, etc.

The answer of *Crawford* county admits the organization of the counties substantially as alleged by the complainant; admits the annexation of the two counties for the purposes alleged in the bill, but that each of said counties had, during all the time in question, separate county courts, having concurrent jurisdiction with the circuit court in civil actions under one thousand dollars, and appellate jurisdiction over justices' courts, and of all crimes not punishable capitally; admits the counties were attached for the time alleged in the bill, but denies that any term of the circuit court was held in *Crawford* county after October, 1835; denies also that as many as two terms a year of the circuit court were held, or that there was but one extra term held during the whole time, and that that one was held for the purpose of trying a man for an alleged murder, committed at Mineral Point in *Iowa* county; denies that the terms held continued so long as stated in the bill, or that the alleged expenditures are chargeable to both counties; alleges that each county had its own sheriff, coroner and clerk, but that the sheriff of *Iowa* had power to execute process in both counties; admits the grand jury had power to inquire and did inquire for both counties; denies that the expenses alleged in the bill were chargeable to *Crawford* county; denies that an equal amount of business arose in *Crawford* county with that

Crawford County vs. Iowa County.

of *Iowa;* admits that the expenses incurred for courts, besides what was paid by the United States, were paid by *Iowa* county; that a large part of the expenses set up in the bill of particulars of expenditure accrued after the holding of the last court in *Iowa;* denies all the equities set up or alleged in the bill, or that the defendants are bound to pay the sum demanded. The answer also insists that the complainants have a remedy at law, and also that the statute of limitations bars the claim of complainants; that by the laws of Michigan, from 1830 to 1836, the counties of *Iowa* and *Crawford* were not corporations, and therefore that neither they or the representatives of either could sue or be sued in a case like that made by the bill, and prays that the defendants may have granted to them all the defense which they might have had, had they demurred to the bill.

This cause was brought to a hearing before the late district court of *Crawfard* county upon bill, answer and proofs. The court ordered and decreed that *Crawford* county pay to *Iowa* county $1,752, with interest thereon until paid, together with costs. From this decree the defendants appealed.

*B. C. Eastman*, for appellants.

I. Neither the county of *Iowa* nor the county of *Crawford* were corporations under the laws of Michigan. Stat. Mich., 1827, p. 358, § 13; id., 376, § 11; id., 374, § 7; id., 375, § 10; id., 198, § 7.

None of the county officers were required to give bonds to the county. Wilcox on Cor. (15) 9.

1. The county of *Iowa* could not become a creditor.

2. The county of *Crawford* could not contract debts.

3. *Iowa* county cannot sue *Crawford* upon a cause of action which arose anterior to the time when they became bodies corporate.

II. The relation existing between the two counties was created by the legislature, and was limited by the terms of the statute creating it. 4 U. S. Laws, 393.

1. *Iowa* county took nothing by implication, but was governed by and restricted within the letter of the act. *Medford v. Pratt*, 4 Pick. 226, 227 ; *Hampshire v. Franklin*, 16 Mass. 67 ; 4 U. S. Laws, 393.

2. *Crawford* could not become a debtor to *Iowa* without its own consent, either expressed or implied. 2 Com. Cont. 151 ; Chit. Cont. 178, 179 ; *Lightfoot v. Creed*, 8 Taunt. 269, 270.

3. As the statute is silent as to the expenses of the court, the law will presume that *Iowa* county should bear the whole expense, in consideration of the benefits it derived by having the court holden within the county of *Iowa*. *Hampshire v. Franklin*, 16 Mass. 89.

4. All the fines and forfeitures accrued to the benefit of *Iowa* county. *Ludlow v. Sikes*, 19 Pick. 328 ; *Windham v. Portland*, 4 Mass. 389 ; Stat. Mich. 1833, p. 501, § 1.

III. *Iowa* county is estopped from setting up any claim upon *Crawford*.

1. The expenses were voluntarily paid by *Iowa*. Story's Eq. Pl., § 483.

2. *Iowa* treated the accounts as debts against itself only, and passed upon and allowed the sums mentioned in the bill, without calling upon or consulting *Crawford*, thereby depriving *Crawford* of the opportunity of investigating the validity of the accounts claimed of *Crawford*.

3. It is not admitted in the answer, nor is there any testimony that any of the accounts were paid by *Iowa*.

IV. There is no equity in the bill. Story's Eq. Pl., §§ 472, 482.

1. It prays no account. 2. It seeks no discovery. 3. The remedy asked for is one at law.

V. The claim is barred by the statute of limitations and lapse of time. Mit. Pl. [272] 333–335, and note ; Story's Eq. Pl., §§ 484, 485, 489, 503, 751, 851 ; *Bank U. S. v. Daniel et al.*, 12 Pet. 56

1. The alleged indebtedness accrued prior to July 4, 1836. The suit was commenced April, 1844. *Ludlow v. Sikes,* 19 Pick. 327; Story's Eq. Pl., § 847; Story's Eq., § 64, and cases there cited; id., § 529, and authorities there cited.

*Dunn & Crawford,* for appellees, argued that a copartnership existed between the counties of *Iowa* and *Crawford,* touching the expenses of holding the courts in the respective counties; that this relation necessarily sprung from and was the result of the statute of Michigan, by which the courts were to be held for both counties; that inasmuch as *Iowa* county had paid all the expenses which had been paid, it was the right of that county to bring the county of *Crawford* into a court of equity to account for and to pay its share and proportion of the expenses which had accrued for the mutual benefit of each.

HUBBELL, J.   This is a case of considerable peculiarity and interest, and it has received a corresponding consideration by the court.

The county of *Iowa,* by its legal representatives, brings suit against the county of *Crawford,* by its legal representatives, for a large sum of money claimed to have been paid by the former, for the latter, for court expenses, while the two counties were united for judicial purposes.   The bill alleges that the counties of *Iowa* and *Crawford,* by an act of the legislature of Michigan, in 1830, were attached for the purposes of circuit courts, which were holden at Mineral Point, from the spring of 1830 to July, 1836; that the sheriff, and other officers of *Iowa* county, acted for both counties during all this period, and that *Iowa* county paid all the expenses, except such as were defrayed by the United States, and claims that these expenses were incurred on joint account, and that *Crawford* is bound to refund one-half the amount.   The bill claims $3,564.53, and interest from July, 1836, and prays for an account and payment.

It was filed on the first day of April, 1844, and the case was decided upon bill, answer, replication and proofs.

The principal points of defense were : 1. That neither of the counties was a body corporate, under the laws of Michigan, and that neither could become a debtor or creditor. 2. That the relation between the two counties was created and limited by statute, and that, as the statute is silent on the subject of expenses, *Iowa* takes nothing by implication. 3. That *Iowa*, having voluntarily paid expenses, is estopped from setting up any claim on *Crawford.* 4. That the claim is barred by the statute of limitations.

Several other points were raised, which it is not material to consider.

In order to the proper understanding of the relation of these parties, it will be necessary to examine somewhat into their history. On the 26th day of October, 1818, *Crawford* county was organized by proclamation of the governor of Michigan territory, embracing the present county of *Iowa* in its bounds, the county seat being located at Prairie du Chien. By an act of the legislature of Michigan, passed October 9, 1829, the separate county of *Iowa* was set off from *Crawford*, and the seat of justice fixed at Mineral Point.

On the 2d of April, 1830, about six months after the organization of *Iowa* county, the following act of congress was passed :

" That the term of the court appointed to be held annually, on the second Monday in May, at the village of Prairie du Chien, by the additional judge of the United States, for the territory of Michigan, shall be held on the first Monday in October, annually, at Mineral Point, in the county of *Iowa*, in the said territory ; and the cases which shall be pending in the said court, on the second Monday in May next, shall be tried and determined at the time and place above designated in the county of *Iowa*, and the clerk and sheriff of said county shall be the clerk and sheriff of this court ; and

its jurisdiction shall be and continue the same as if said county of *Crawford* had not been divided."

Under this act, the judicial proceedings of *Crawford*, so far as the circuit court was concerned, were transferred to the county of *Iowa*, and the expenses alleged to have been incurred by *Iowa*, accrued in pursuance of this law. At the same time these counties had separate county courts, and were, in every respect, separate and independent. In 1836, by an act of the legislature of the territory of Wisconsin, passed at Belmont, the counties of *Crawford* and *Iowa* were, in form, constituted bodies corporate and politic, and the relationship which had existed between them, as to their circuit court, was finally dissolved. It does not appear that any specific grant of corporate powers had ever previously been made to either of the counties; at least no legislative act to that effect is found, and the proclamation of the governor of Michigan, organizing *Crawford*, is not at hand.

Certain it is, however, that their fiscal affairs were managed by boards of supervisors or commissioners, constituted by laws of the territory, who had the power of auditing accounts and charges against the county, and that all the ordinary expenses of county government were, from time to time, audited and paid by taxes raised in the manner prescribed by law. The relation of debtor and creditor, on the part of the county, was recognized by such a series of legislative acts and public transactions that it would be now hardly reasonable or just to suffer either to exempt itself from liability on the ground of want of legal capacity. If the claim in the present case were admitted to be honest and lawful, the defense interposed upon this ground would partake so strongly of fraud as to compel this court to hold the defendant estopped from setting it up. This disposes of the respondents' first point. The second is, that the relation between the two counties was created and limited by statute, and that, as the statute is silent on the subject of expenses, *Iowa* takes nothing by implication. This

position is true in point of fact. No mention whatever is made, in any of the several laws which have been referred to, of the expenses of the circuit court held at Mineral Point and exercising jurisdiction over the two counties. During the six years' pendency of this united jurisdiction, both counties were represented in the legislative assembly of Michigan. Their respective rights, interests and wants must have been understood by their delegates, as well as the fact that *Iowa* was continually paying the current expenses of the court. The omission of the legislature, under these circumstances, to make any provision by law for the apportionment or joint payment of the court expenses is strongly significant of a common understanding at the time, that they were to be borne in the county where the courts were held. The auditing and paying of these sums wholly by the county of *Iowa* for a series of years also raises a strong presumption of the same fact.

In the Belmont legislature, also, both counties were represented, and yet a law, providing for their permanent separate jurisdiction and existence, was passed, without any provision for a settlement of their alleged joint liabilities. It is to be considered further, that the legislature well knew that a large part—indeed, quite the largest part—of the current expenses of the circuit court were paid by the general government (those of the judge, the grand jury, the clerk, etc.), and that most of the fees of other officers were collectable by law from the parties litigant. The expenses that remained might well be regarded as a fair equivalent for the superior advantage enjoyed by *Iowa* in having the county seat located at Mineral Point, and for the extra trouble and cost on the part of the inhabitants of *Crawford* in traveling to and attending upon a distant court. This consideration was recognized in the case of *The County of Hampshire v. The County of Franklin*, 16 Mass. 76—a case remarkably similar to the present, and decided upon the same principle, except that the court held

Crawford County vs. Iowa County.

the parties bound by an award of commissioners, instead of adjudicating directly upon the question at issue.

C. J. PARKER says : " We do not see that *Hamsphire* would have any claim upon *Franklin* for a share of these expenses, for the act is silent about them ; and, for aught which would appear, it was intended by the legislature and agreed to by the parties that the county of *Hampshire* should bear all this expense, in consideration of the inconveniences the inhabitants of *Franklin* would be subjected to in attending the court at such a distance from their homes, and the advantages which *Hampshire* would derive from being the judicial center of three counties." These reasons would seem conclusive, as to the understanding and intention both of the legislature and the parties ; and, in the absence of any statutory provision requiring payment of a part by *Crawford*, and in view of the voluntary payment of the whole by *Iowa*, this court might justly hold *Iowa* absolutely concluded by her silence and by her open acts.

But there is yet a stronger objection to the complainants' recovery. This is a suit, in the nature of an action in assumpsit, for the recovery of a sum of money which *Iowa* claims she has paid for *Crawford*. To sustain such an action there must have been a request, express or implied, or a joint liability on the part of both counties. There was no express request in any form, and an implied one cannot well be drawn from the facts. The act of congress, transferring the courts, was compulsory upon the people of *Crawford*. Their seat of justice, which for many years had existed at Prairie du Chien, was transferred to a distant locality, and they were required to travel beyond their county limits, as well to obtain redress of their own grievances as to answer the demands of others ; and this change was effected only a few months after *Iowa* was first set off from *Crawford* and organized as an independent county.

The presumption is quite as strong that congress intended, under the circumstances, that *Iowa* should pay the whole as

that *Crawford* should pay a part.   It is fair to observe, on this point, that when *Iowa* was set off from *Crawford*, by the act of 9th October, 1829, all suits then pending in *Crawford* county, in which the people of *Iowa* were concerned, were required to be prosecuted and concluded as if no separation had been made, and thus a considerable item of expense was thrown upon *Crawford*.   By the same act the taxes of *Iowa* for the year 1829 were remitted.   Laws Mich., 1833, pp. 675, 676.

No claim on this account has ever been set up by *Crawford*, and it would probably be thought absurd at this day to assume an implied request, on the part of *Iowa*, that *Crawfor d* should pay her part of these joint expenses ; yet such an assumption would be scarcely less violent than the present.   There is, in truth, no ground in reason or fact to assume a request of *Crawford* that *Iowa* should pay the alleged bill of expenses. The only question that remains is, was there a joint legal lia-bility ?   There was none by express law.   The act which required the circuit courts to be holden within the county of *Iowa*, as we have seen, is silent as to the expenses, and no implication can be raised from that silence in favor of *Iowa*. But if the expenses were to be jointly paid, in what propor-tion ?   Implications of law are founded upon reason and justice, and the reason and justice must be so clear as to admit of no doubt or denial.   If a joint liability is implied, it must arise from a joint interest and benefit; but, in this case, the benefit to the one may have been a positive injury to the other. It is impossible to adopt any scale by which the advantages, if there were any on the part of *Crawford*, can be ascertained. It is clear that the arrangement was not, and could not have been, mutually and equally beneficial; *Iowa* had the better side.   But the circumstances of the two counties were so dif-ferent that any attempt to ascertain their respective advantages must end in mere conjecture.   The law does not raise impli-cations, nor take away or confer rights upon conjecture.   In a

court of law this claim could not be maintained, and the same principle rules in equity; indeed, there is no ground for pursuing this demand in equity, except the assumed necessity for a discovery from the respondents or the prayer for an account. The occasion for a discovery is not apparent, and the account is fully set forth in the complainants' bill. But as the case is, in substance, fairly before this court, it has been deemed best to decide it here, and not send the parties into a court of law, to renew an unnecessary litigation.

Having arrived at the conclusions above stated, it is not necessary to discuss the other point growing out of the statute of limitations. It may be remarked, however, that the same rule of construction applies in equity as at law, and that, as the alleged liabilities on the part of *Crawford* accrued more than six years before the filing of the bill, the recovery would be cut off by the statute, unless it should be made to appear that there was a current account existing between the parties, of which some items had been paid or charged within the six years.

No evidence of such mutual account has been given. On every ground, therefore, it is believed that the defense has been sustained, and the decree of the court below must be reversed, with costs.

Decree reversed accordingly.