WINNEBAGO COUNTY, Respondent, vs. DODGE COUNTY, Appellant.

*March 16—May 2, 1905.*

*Compulsory reference: Long account: Suits in equity: Expenses of reference: Fees of referee: Discretion: Employment of bailiff: Powers of referee: Place of execution of reference.*

1. A suit for an accounting with a defendant as to property and interests coming under his control both as administrator and surviving partner, where the account must obviously be long, although many incidental questions of law are involved, presents a case for a compulsory reference within the calls of sec. 2864, Stats. 1898.

2. Under sec. 2864, Stats. 1898, a compulsory reference is not confined to actions at law, but is authorized in suits in equity as well. A statement to the contrary in *Druse v. Horter,* 57 Wis. 644, overruled.

3. Under sec. 2930, Stats. 1898 (providing that where a compulsory reference shall be ordered the fees and expenses of the referee shall be fixed by the court in which the action is pending upon the coming in of the report), the circuit court has a broad discretion, and the supreme court will yield to that discretion of the circuit court when it has acted within the field conferred upon it by law.

4. A cause was taken on change of venue from Dodge to Winnebago county and there referred to a referee to hear, try, and determine. During the progress of the trial the referee died and another one was appointed who filed the report. *Held,* that it was proper, on the coming in of the report, to fix the compensation and expenses of all referees, including the one deceased.

5. In such case an allowance for extension by the reporter of the testimony taken before the deceased referee is a proper item of expense.

6. In such case the multitude of exhibits and the danger of confusion or of injury to valuable articles might well justify the employment of a bailiff to aid in the arrangement of the room where sittings were held, the care, classification, preservation, and transportation of exhibits, and the like, and it is *held* that there was no abuse of discretion, either by the referee in employing such help or by the court in allowing the expenses thereof.

7. Where not only was there necessity of continued reference to

books of account, and correspondence files covering many years,. by the referee, witnesses, and attorneys, but also frequent inspection of multitudinous parts of various types of machines. manufactured during some thirty years, involving necessary inspection by numerous experts and various participants in the hearing, it is proper for the referee to hold sittings at the place where the evidence is located; and traveling and hotel expenses. of the referee, attributable thereto, are within the discretion to be accorded to the trial court in fixing the expenses of the reference.

8. In the absence of limitation in that respect by statute, a referee has power to act outside of the county where sits the court appointing him.

APPEAL from an order of the circuit court for Winnebago county: LAWRENCE W. HALSEY, Judge. *Affirmed.*

The action of Mary E. Rowell et al. v. John S. Rowell et al., being properly commenced in *Dodge* county, was duly changed to *Winnebago* county and there tried at great length. The judgment originally entered came before this court for review, and was affirmed, with slight modification, May 10, 1904 (122 Wis. 1, 99 N. W. 473), where the general character of the case is disclosed. After *remittitur* to the trial court, the clerk of the circuit court presented a bill of court expenses for taxation and allowance against *Dodge* county, and gave notice to the district attorney of *Dodge* county of that taxation. That bill, as summarized, consists of fees of Referee Merrill, twenty-nine days, at $15 per day, and $73.52 expenses of railroad fare and hotel, total $508.52; fees of Referee Forward, $10 per day while at home and $15 per day while away from home, total 147 days, together with $179.71 railroad and hotel expenses, aggregating $2,140.71; fees of bailiff for attending on referee, at $2 per day, $136; fees of Jesse D. Carr, court reporter, $10 per day for attendance before respective referees, five cents per folio for transcripting the evidence, $25 for care and custody of exhibits, and $26.50 for express,. postage, and binding of exhibits, total $3,323.50; and, finally, fees of sheriff, clerk, and stenographic reporter for three days.

in court upon the trial, $54; making a total of $6,026.73.
Appearance and objection were made before the circuit judge
of *Winnebago* county, who, however, taxed and allowed the
bill of costs as presented.   Thereupon appeal was taken to the
circuit court of that county, where, another judge being called
in, further objections were made, and a full trial was had upon
evidence; whereupon the taxation by the circuit judge was
confirmed by order dated October 24, 1903, from which
*Dodge* county appeals.

   *Paul O. Husting,* attorney, and *M. L. Lueck,* of counsel,
for the appellant.

   *Carl D. Jackson,* for the respondent.


   DODGE, J.   Amongst the most urgent of appellant's con-
tentions are that the circuit court erred in so construing the
statute (subd. 1, sec. 2864, Stats. 1898) and the pleadings as
to justify a compulsory reference, and that it abused its dis-
cretion in the orders made fixing the compensation and ex-
penses of the referees and of the reporter.   It would be an in-
teresting question, if it were necessary of decision, how far in
this, an independent and collateral proceeding, the judicial
action of the circuit court in a case confessedly within its
jurisdiction could be reviewed, even by the appellant here,
who was not a party to that action but was affected incidentally
by rulings of the court.   The view we have taken upon certain
other subjects, however, will render the decision of such ques-
tion unnecessary.

   We have no doubt that the pleadings in the case of *Rowell
v. Rowell* [122 Wis. 1, 99 N. W. 473] presented a proper
case for a compulsory reference, for the reason that the pri-
mary and dominant object of the suit was an accounting by
John S. Rowell, and certain others associated with him, as to
the manner and result of his disposal and of his and their
management of property and interests coming under his con-
trol both as administrator of Ira Rowell, deceased, and as

surviving partner of the firm of J. S. Rowell Sons & Co.,.
and it was apparent that such accounting would, as it did,.
involve the taking of a very long account.    True, as is ap-
parent from the subjects which were brought before this court
on appeal in that case, there were many incidental questions
· of law, but they were all ancillary to and in aid of the ac-
counting.    They involved, as one important question, whether·
the disposal by John S. Rowell of the share of the decedent
in the partnership was a sale, so that he need charge him-
self only with the purchase price fixed by him; also, if it
was not a sale, and hence he must continue his · account
throughout the period that he continued to hold and enjoy
the property in which that interest lay, what were the ele-
ments entering into the value of that share with which he
must charge the new firm which continued to employ it and
had reaped the fruits of it?    The necessity of an accounting
necessarily long, in any event, was apparent from the plead-
ings themselves, although its full extent and scope might well
depend upon the resolution of incidental questions such as
that above suggested.    While it has been consistently held,
though with some confusion of expression, that the authority
of the court to make a compulsory reference of a case, whether·
in law or equity, is limited by sec. 2864, Stats. 1898, and the·
mere fact that, before the final judgment in a case, account-
ing of considerable length may be necessary, while the princi-
pal issues presented are questions of law not involving nor in-
volved in an accounting, does not authorize the court to submit
the whole case to a referee to hear and determine the issues, .
but it should refer merely the taking of any necessary account
after such determination has been made by the court, still it·
has never been doubted that where the primary purpose of the
action was accounting, and the account must obviously be a
long one, this statute conferred the authority to refer the whole
case, and, in the court's discretion, to submit to the referee all.
incidental questions of law arising therein.    *Littlejohn v..*

*Regents,* 71 Wis. 437, 37 N. W. 346; *Briggs v. Hiles,* 79 Wis. 571, 48 N. W. 800; *Best v. Pike,* 93 Wis. 408, 414, 67 N. W. 697; *Jordan v. Warner's Estate,* 107 Wis. 550, 83 N. W. 946.

It is suggested by the appellant that in *Druse v. Horter,* 57 Wis. 644, 646, 16 N. W. 14, it was said that a reference under this statute is confined to actions at law; thence deducing that there is no authority for a compulsory reference in suits in equity. True, that remark is made, but could not have been intended to authorize such deduction, for in *Littlejohn v. Regents, supra,* at page 442 (37 N. W. 348), the court, speaking by the same justice, treats the statute as applicable alike to actions at law and suits in equity, and numerous cases in this court have sustained compulsory references in the latter, albeit without expressly correcting this remark in the *Druse Case.* It was referred to in *Jordan v. Warner, supra,* at page 550 (83 N. W. 950), and was followed by the immediate declaration that, notwithstanding that remark, the court had discretionary power to refer that case, which was one in equity, for an accounting; thus by implication, at least, excluding the limitation now suggested by appellant. In *Brown v. Runals,* 14 Wis. 693, 697, it is pointed out that courts of equity formerly had full power and authority to refer to a master in cases pending before them, but that in Wisconsin this authority had been curtailed by our constitutional provision (sec. 19, art. VII) that "the testimony in causes in equity shall be taken in like manner as in cases at law;" hence that the authority to refer equity causes must, as in actions at law, be found in the statute. We consider, therefore, that this statement in *Druse v. Horter, supra,* that such a reference is confined to actions at law, is erroneous, and it is now so declared, as indeed it has been treated ever since it was made.

Having reached the conclusion that the reference was within the authority of the circuit court, we come next to the *quantum* of the expenses thereof as allowed. The total is striking, if not appalling, and, notwithstanding the magnitude of the case,

severely strains our faith in the earnestness of efforts on the part of the referees, and even of the circuit court, to confine the expenses to such as were necessary; the former by restraining counsel from undue discursiveness and prolixity in the trial, and the latter by denying allowance of expenses which by greater diligence and firmness on the part of the referee might have been avoided. Still sec. 2930, Stats. 1898, provides that "where a compulsory reference shall be ordered the fees and expenses of the referees shall be fixed by the court in which the action is pending upon the coming in of the report;" thus conferring upon the circuit court a broad field of discretion, in which he may vary from one extreme to another of strictness or laxity, without its being possible upon appeal to assert abuse of discretion. Doubtless the circuit court owes a reasonable deference to the discretion of the referee in the conduct of the hearings before him, and, as has so often been held, this court must yield to the discretion of the circuit court when it acts within the field conferred upon it by law.

With reference to the rates of compensation, whether of the referees or of the court reporter, no serious controversy is raised; and we are not able to say that the gentlemen of the bar whom the court selected as referees may not, within its knowledge, have been of such professional standing and ability that the rate of $10 per day while at home, or of $15 per day while absent from home, would be reasonable. Again, the rate of compensation allowed the court reporter is that fixed by statute, if the services allowed for were duly rendered. Sec. 2438, Stats. 1898, allows a *per diem* not exceeding $10 per day, and sec. 2439, Stats. 1898, authorizes the court reporter, upon direction of the court, to attend the trial of any action upon compulsory reference, to take the evidence and furnish the referee or referees with a transcript thereof in longhand, when the court shall so order, and to receive the same compensation as for similar services rendered in court; and the same section prescribes five cents per folio as his fee for transcribing the evidence.

The most striking feature of this bill is the allowance for 176 days spent by the two referees in disposing of the case; but we are not called on to decide whether this exceeded the time which could have been at all reasonably necessary to that service, for the reason that appellant raises no such question by either assignment of error or by argument.

A principal question argued is whether any allowance could be made to the first referee, Merrill, who died after twenty-nine days of progress in the trial. The objection urged is that, as he never made a report, the time never came when the circuit court had authority to fix his fees under sec. 2930, Stats. 1898, which authorizes that to be done upon "the coming in of the report." This is an extremely narrow view. Clearly the statute contemplates that upon a compulsory reference the referee is to receive reasonable compensation from the county treasury, to be fixed by the circuit judge; and, while the statute directs that it be so fixed upon the coming in of the report, if, by reason of death, that referee never makes a report, it would be strange indeed if the legislative intent was that he should fail entirely of compensation. We think no such unreasonable result necessary. This reference was properly all one, and the order directing it to be taken up by Mr. Forward upon Mr. Merrill's death was, in practical effect, no more than the appointing of another referee. *Carpenter v. Shepardson,* 46 Wis. 557, 1 N. W. 173. So that, upon the coming in of Mr. Forward's report, we think the situation was presented upon which the statute authorized the compensation and expenses of all referees upon that reference to be fixed. Further, it would be no stretch of the ordinary administrative powers of the presiding judge of a court to fix the compensation of any officers which the law authorized him to appoint at public expense without otherwise defining their compensation.

Special attack is made upon allowance for extension of the testimony taken before Merrill, since it could never be needed for Merrill's report at the time when it was ordered.

We think, however, this is allowable on either of two theories: First, the service had been mainly rendered from day to day under direction of the referee, Merrill, while still alive. The very purpose of the reporter is to keep the referee and counsel supplied with a record of the testimony. In a case like this, of course, it would be impossible for either referee or counsel to cover the case completely, or to avoid a vast amount of repetition, unless they have before them a written transcript as the case proceeds. And, secondly, the referee must be vested with discretion as to what is necessary for the conduct of the business before him; and if Referee Forward deemed this transcript necessary, and did not abuse his discretion in so concluding, it was a legitimate expense of the referee when authorized by order of court.

The consideration last suggested applies to the $136 bailiff's fees upon the trial before the referee. From the character of this case, the multitude of exhibits and the danger of confusion or injury to very valuable articles might well have justified the employment of a person to aid in the arrangement of the room where sittings were held, the care, classification, preservation, and transportation of the exhibits, and the like; and doubtless such service might well expedite the proceeding so as to lessen other expenses to an amount greater than the compensation of such bailiff. Hence it cannot be said that there was an abuse of discretion, either by the referee in employing such help or by the court in allowing such an expense. The power to employ some such aid would seem to result from a referee's duty and authority to preserve order and punish violations thereof imposed by sec. 2865, Stats. 1898.

The next subject of attack is allowance of enhanced rate of compensation to the referees, and of traveling and hotel expenses, attributable to their sitting sometimes at Beaver Dam instead of Oshkosh. The objection urged is that this was done solely for convenience and economy of parties. If it

were conceded to be improper for a referee to enhance his charges and expenses payable out of the public treasury solely to save expense to the parties, yet we cannot accede to the view that such was the sole purpose in this case. It is very apparent that the trial might be—indeed was—very much shortened by taking testimony at Beaver Dam. Not only was necessary continual reference to books of account, and correspondence files covering many years, by referee, witnesses, and attorneys, but also frequent inspection of the multitudinous parts of the various types of machines manufactured during some thirty years' life of the business. The value of numerous patents, and the extent to which they were used in and served to improve or modify the machines or enhance profits, was an issue tried at much length, involving such inspection by numerous experts and by various participants in the hearing. Inevitably such references and inspection must have continually interrupted hearings at Oshkosh, and involved many postponements and repetitions, which might well have protracted the reference, and caused expenses greater than those resulting from the Beaver Dam sittings. Hence the propriety of the latter was also within the field of discretion to be accorded the trial court.

We cannot sustain the further suggestion that a referee has not power to act outside of the county where sits the court appointing him. No such limitation is expressed by statute, and, so far as courts have spoken, they have favored such power. *Pierce v. Voorhees*, 3 How. Pr. 111; *O'Brien v. Catskill M. R. Co.* 32 Hun, 636; *Oliver v. Town*, 24 Wis. 512.

On the whole, therefore, we are unable to discover that the circuit court, in this special proceeding, erred in allowing any of the disbursements made by *Winnebago* county, which are now attacked, as proper claims against *Dodge* county, pursuant to secs. 2940, 2941, Stats. 1898.

*By the Court.*—The order appealed from is affirmed.