MILWAUKEE COUNTY, Appellant, vs. HALSEY, Respondent.

*February 24—April 3, 1912.*

*Constitutional law: Statutes: Construction: Repeal: Validity: Spe-
cial, private, and local acts: Circuit courts: Salaries of judges:
Classification: Requiring part of salary to be paid by county:
Uniformity in county government: Taxation.*

1. Where a statute is fairly susceptible of two constructions, that
   one is to be preferred which will leave it valid and constitu-
   tional, rather than one which defeats it.
2. The $400 allowed to each circuit judge by ch. 263, Laws of 1889,
   for "his necessary expenses while in the discharge of his
   duties" was not a part of the "compensation" of such judge

within the meaning of sec. 26, art. IV, Const.; and the "excess over the compensation of other circuit judges," which by ch. 377, Laws of 1897, was to be paid to the judges of the Second judicial circuit by the county of Milwaukee, was the difference ($1,400) between the salary of other circuit judges and the salary fixed for the judges in said Second circuit.

3. Ch. 138 and ch. 414, Laws of 1901, fixing the salaries of circuit judges at $4,000, with an additional allowance for expenses, and repealing all acts and parts of acts in conflict therewith, did not affect the salaries of the judges in the Second circuit as fixed by ch. 377, Laws of 1897, but only the salaries of such judges as were before fixed by ch. 12, Stats. (1898), which the said acts purported to amend; and the excess to be paid to judges of the Second circuit by Milwaukee county was thereby reduced to $1,000.

4. A law relating to the salaries of one class of circuit judges does not in any way conflict with a law fixing the salaries of another and different class.

5. Repeals by implication are not favored; and a general clause repealing all conflicting acts or parts of acts does not repeal other acts relating to the same general subject unless there is an actual conflict.

6. The fact that the legislature afterwards recognizes a law as being in force tends to show that it was not the intention to repeal it at a previous session; but is not conclusive.

7. Ch. 520, Laws of 1905, which provides that "the judges of the circuit courts shall receive as salary, in addition to the amount now received, the sum of $600 per annum," was an independent enactment and applied to all circuit judges including those in the Second circuit.

8. A statute relating to the creation, tenure, and salary of a state officer, such as a circuit judge, or creating, or regulating the administration of public justice by, a court of general common-law and equity jurisdiction within a judicial circuit, is neither special, private, nor local in the constitutional sense.

9. The mere fact that in a judicial circuit consisting of a single county a statute creates a charge upon such county for part of the salary of the circuit judge or judges, does not make the law a part of the system of county government so as to render the constitutional rule of uniformity applicable; and the fact that the county is mentioned by name in the act is unimportant.

10. Such an act does not contravene the constitutional requirement that the rule of taxation shall be uniform.

11. Counties having a population of 100,000 or more, each consti-
tuting a single judicial circuit, have the characteristics of a
class in numbers, in wealth, in amount of litigation therein,
in the extra expense which they cause to the state, and in the
advantages they receive from having the circuit court of sev-
eral judges constantly within their boundaries, which furnish
a sufficient reason for imposing upon such class a share of the
expense of administering justice, from which other counties
are exempt.

BARNES, J., dissents.

APPEAL from an order of the circuit court for Waukesha
county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a demurrer to a
complaint and stipulation of facts.

For the appellant there were briefs by *Winfred C. Zabel,*
district attorney, and *William L. Tibbs,* assistant district at-
torney, and oral argument by *Mr. Zabel.*

For the respondent there was a brief by *Thomas W. Spence*
and *Geo. P. Miller,* and oral argument by *Mr. Miller.*

TIMLIN, J.    The complaint shows that the defendant is
circuit judge of the Second judicial circuit and entered upon
a term on April 2, 1901, and again entered upon a term of
six years on the 1st day of January, 1906, and received from
the state of Wisconsin an annual salary of $4,000, and in ad-
dition, as salary or compensation, other moneys from *Milwau-
kee County* amounting to $250 per quarter or $1,000 per year.
It is contended that these latter payments were illegal and the
action is brought to recover the money so paid by the county.

Two questions arise: (1) What statutes are in force and
their meaning?    (2) Are the statutes, when given their true
meaning, unconstitutional?    These questions are interrelated
because of the rule that, where a statute is fairly susceptible
of two different constructions, that which will leave the stat-
ute valid and constitutional is to be preferred.

Prior to the amendment to the constitution ratified in
April, 1897, there was but one class of judicial circuits and

one class of circuit judges in this state.   Five judicial circuits were created by the constitution, but the legislature was given power to increase the number of circuits, bounding such circuits by county lines, not, however, so as to legislate a judge out of office, and the minimum salary of the circuit judges was fixed.   The circuit judges were to receive no fees of office or other compensation than their salaries.   Const. art. VII. While the constitutional provisions stood thus there was enacted and in force ch. 12, R. S. 1878, "Of Salaries and Permanent Appropriations," which fixed the annual salaries of judges of the circuit court at $3,000 each.   Ch. 246, Laws of 1885, raised this salary as to the judges thereafter elected to $3,600 annually, and ch. 263, Laws of 1889, provided that each of the several judges of the circuit courts in this state should receive the sum of $400 per annum as and for his necessary expenses while in the discharge of his duties as such judge, in addition to the salary then provided by law, and that the act should apply to the several judges then in office. It may be observed in passing that in addition to the explicit provisions of this statute to the effect that the allowance there made is for expenses and in addition to salary, the act would be invalid on its face if we should consider the allowance there made "compensation" within the meaning of that word in sec. 26, art. IV, Const., which provides that the compensation of a public officer shall not be increased or diminished during his term of office.   The substance of these statutes, condensed, rewritten, but without material change, was carried into the Statutes of 1898, where it appears in ch. 12 in these words:

"The judges of the circuit courts, three thousand six hundred dollars each, and in addition thereto each judge shall receive the sum of four hundred dollars per annum as and for his necessary expenses while in the discharge of his duties, such amount to be paid quarterly."

This revision was enacted and approved August 20, 1897, to go into effect September 1, 1898.   The statutes revised and condensed in the Statutes of 1898, viz.: R. S. 1878, ch. 246,

Laws of 1885, and ch. 263, Laws of 1889, were expressly repealed on August 20, 1897, such repeal to take effect September 1, 1898. On the same day, viz., August 20, 1897, there was approved, and on August 23d published, ch. 377, Laws of that year. This recited the recent constitutional amendment to the effect that in any circuit composed of one county, only, which county contains a population of 100,000 or over, the legislature might from time to time authorize additional circuit judges to be chosen. By this amendment every circuit judge was also required to reside in the circuit from which he is elected and to hold his office for such term and receive such compensation as the legislature should prescribe. It was then recited that the Second judicial circuit was composed of *Milwaukee County,* containing more than the required population, and that there was need of an additional circuit judge in that circuit. It was then enacted that an additional circuit judge be elected in this circuit and his election and term of office provided for. Then occurs the following sentence in the third section of the act:

"The judges of the Second judicial circuit shall, on and after January first, A. D. 1900, receive a salary of five thousand dollars per annum payable as other circuit judges are paid, provided that the excess over the compensation of other circuit judges shall be paid by the county of *Milwaukee* in the same manner as the compensation of judges of the superior court is paid."

It so happened that the term of Hon. D. H. JOHNSON, the sitting single judge of the Second circuit, would expire January 1, 1900, and the term of the additional judge provided by the act would commence on or after that day. The judges of the superior court of *Milwaukee County* were paid quarterly by *Milwaukee County.* We give to the word "compensation" found in this act the same meaning which the word has in the state constitution, sec. 26, art. IV, sec. 10, art. VII, sec. 5, art. V, sec. 2, art. VI, sec. 3, art. VI. The "compensation"

of other circuit judges did not include the reimbursements provided for by ch. 263, Laws of 1889, because to hold otherwise would give this word a meaning different from its manifest meaning in the constitutional provisions above referred to and would convict the legislature of passing an unconstitutional law when it enacted ch. 263, *supra,* and because that act itself expressly distinguished the sum so awarded from salary, while in the constitution the words "salary" and "compensation" are employed synonymously.   The "excess over the compensation of other circuit judges" was therefore at this time the excess of $5,000 over $3,600 or $1,400.

At the next session of the legislature, chs. 138 and 414, Laws of 1901, were enacted, and these acts raised the salaries of judges whose terms should thereafter (May 14, 1901) commence, and again distinguished between the salary and the allowance for expenses.    These acts last mentioned purported to amend only ch. 12, Stats. (1898), and repealed all acts and parts of acts in conflict with their provisions.    They did not in words amend or purport to amend or repeal ch. 377, Laws of 1897, relating to the judges of the Second circuit, and they did not raise the salary of these judges, but did raise the salary of all such judges whose salaries were fixed by ch. 12, Stats. (1898), from $3,600 to $4,000 per annum, and consequently diminished the "excess" above mentioned from $1,400 to $1,000.    The judges of the Second circuit acquiesced during their first terms in that construction of ch. 377, Laws of 1897, which made the "excess" which they were to be paid by *Milwaukee County* only $1,000, and thereafter both parties acquiesced in a construction of these statutes which would exclude this $400 for expenses.   In other words, the judges of the Second judicial circuit continued to receive from the county $1,000 per year.   We do not consider ch. 377, Laws of 1897, repealed by the general clause repealing all acts or parts of acts which in any way conflict therewith, found in

chs. 138 and 414, Laws of 1901.  A law relating to the salaries of one class of circuit judges does not in any way conflict with a law fixing the salaries of another and different class.  There is no necessary antagonism or conflict.  If sec. 170, ch. 12, Stats. (1898), and ch. 377, Laws of 1897, stood together and were not in conflict prior to the enactments of 1901, it is hard to see how they became in conflict by reason of the enactments of 1901.  Repeals by implication are not favored, and it has been decided that a general repealing clause like this did not repeal other acts relating to the same general subject unless there was actual conflict between the statutes.  *Simmons v. Bradley,* 27 Wis. 689; *Lewis v. Stout,* 22 Wis. 234.  Besides, ch. 377, Laws of 1897, was long after and by ch. 2, Laws of 1903, by the legislature recognized as in force.  *State ex rel. Gates v. Comm'rs of Public Lands,* 106 Wis. 584, 82 N. W. 549.  This, however, is not conclusive; only a makeweight.  *Walworth Co. v. Whitewater,* 17 Wis. 193; *Janesville v. Markoe,* 18 Wis. 350.

Ch. 520, Laws of 1905, then came into existence in these words:

"The judges of the circuit courts shall receive as salary, in addition to the amount now received, the sum of six hundred dollars per annum, payable quarterly, out of the state treasury."

Can this be limited to judges outside of the Second circuit or does it apply to all the circuit judges of the state of both classes, so that those outside of the Second circuit who were then receiving $4,000 yearly should be entitled to $4,600, and those who were receiving $5,000 yearly should be entitled to $5,600, thus leaving the excess of the salaries of the judges of the Second judicial circuit to be paid by *Milwaukee County,* still $1,000?  We are satisfied that this act must be applied to all circuit judges, adding to the amount "now received" by each.  It is an independent enactment, contains no reference

to any prior statute, refers to existing conditions of fact, and uses words applicable to all circuit judges in the state.  We perceive no reason apparent upon the face of the statute for restricting its provisions to a single class.  If we endeavor to apply it to one class, which class shall that be?  If we apply it to all circuit judges, we cannot disregard the words "in addition to the amount now received."  By no permissible construction of pre-existing statutes were all the circuit judges of the state in 1905 receiving equal salaries, so that we must hold that each class had by this act $600 added to the salary its members were then receiving.

Counsel for appellant further contends that ch. 377, Laws of 1897, is unconstitutional, and hence that the retention of the excess salary from the county cannot be justified.  He contends (a) it violates sec. 23, art. IV, of the constitution, which provides that the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable; (b) it violates subd. 6 of sec. 31, art. IV, Const., which prohibits the legislature from enacting any special or private law for assessment and collection of taxes; (c) it violates sec. 1, art. VIII, which provides that the rule of taxation shall be uniform, and taxes shall be levied on such property as the legislature shall prescribe; (d) it violates sec. 18, art. IV, which provides that no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title. It is quite rare to find and would be quite difficult to devise a statute which would conflict with so many different provisions of the constitution.  We must not fall into the error of seeing a conflict with one requirement of the constitution merely because we cannot readily trace its conflict with another.  But it seems very patent to us that a law like this, relating to the creation of, tenure of, and salary of a state officer whose jurisdiction is in many matters coextensive with the boundaries of

the state, cannot be said to be either special, private, or local. Nor could a law creating, or regulating the administration of public justice by, a court of general common-law and equity jurisdiction within a judicial circuit be considered special, private, or local.

We next consider the constitutional provision with reference to the singleness of system and uniformity of county government. The statute in question does not relate to the system of county government. It deals with an office, its term, and its salary, which is not a county office, and the mere fact that the statute creates a charge upon the circuit for part of the salary of the circuit judge and that circuit is coterminous with the county does not make the law a part of county government. That the county is mentioned by name in the act of 1897 is unimportant. There is no such restriction applicable as in the case of amending a city charter. To call the circuit a county or the county a circuit for the purpose of identifying it for regulation or burden can make no substantial difference. A law prescribing the manner of raising or securing funds for the building of a court house does not relate to the system of county government. *Milwaukee Co. v. Pabst,* 45 Wis. 311. See, also, *State ex rel. Graef v. Forest Co.* 74 Wis. 610, 43 N. W. 551; *Rock Co. v. Edgerton,* 90 Wis. 288, 63 N. W. 291; *State ex rel. Marinette, T. & W. R. Co. v. Tomahawk,* 96 Wis. 73, 71 N. W. 86; *State ex rel. Busacker v. Groth,* 132 Wis. 283, 112 N. W. 431; *State ex rel. Scanlan v. Archibold,* 146 Wis. 363, 131 N. W. 895. The statute in question relates to an institution of the state recognized by the constitution and provided for therein for the exercise of the judicial function of the general government and has no relation to the system of county government.

It is next argued that imposing upon one county the duty of paying a part of this salary contravenes the constitutional command that the rule of taxation shall be uniform. This is

quite a far-reaching claim.   It is not claimed that there is any express limitation in the constitution other than those referred to.   From the beginning counties have been required to aid in the administration of public justice by providing court houses, jails, paying the salaries of clerk and district attorney, paying counsel fees of indigent persons accused of crime, and there are several judgments affirmed in this court against counties for the expenses and disbursements of other counties in civil and criminal trials of causes removed from the first county for trial in the latter.   These judgments rest upon valid statutes.   *Winnebago Co. v. Dodge Co.* 125 Wis. 42, 103 N. W. 255; *Williams v. Dodge Co.* 95 Wis. 604, 70 N. W. 821.   The county may be required to pay the fees of *quasi*-judicial officers in tax matters, *State ex rel. Ellis v. Thorne,* 112 Wis. 81, 87 N. W. 797; of reviewing assessments, *State ex rel. Williams v. Samuelson,* 131 Wis. 499, 111 N. W. 712; the expenses of a criminal trial held outside the county, *Waushara Co. v. Portage Co.* 83 Wis. 5, 52 N. W. 1135; the expenses of trials held within the county of cases arising in another county annexed to it for judicial purposes, *Crawford Co. v. Iowa Co.* 2 Pin. 368.   A number of instances will be found in the note to *Jefferson Co. v. Besley,* 5 Wis. 134, Dixon's Notes.   Counties have been required to pay the salaries and bear the expenses of municipal or inferior courts, the judges of which are certainly not county officers.   *In re Bergin,* 31 Wis. 383; *Shaffel v. State,* 97 Wis. 377, 72 N. W. 888; *American L. & T. Co. v. Bond,* 91 Wis. 204, 64 N. W. 854; *State ex rel. Le Clair v. Wright,* 80 Wis. 648, 50 N. W. 894.   Counties have been required to contribute to other public purposes besides the administration of justice, as for illustration the construction or repair of a bridge within a town in the county when the cost of the bridge or repairs will exceed one fourth of one per cent. of all the taxable property of the town, although certain cities and villages within the same

county are exempted.    *State v. Sauk Co.* 70 Wis. 485, 36
N. W. 396.    In *Jensen v. Polk Co.* 47 Wis. 298, 2 N. W.
320, at page 310 it is said:

"It was held by this court that a special act granting power
to one county to aid in the construction of a railroad did not
violate this rule of uniformity [county government]; and if
it did not, it is difficult to see how an act which compels the
county to aid in opening a highway in such county can be
unconstitutional for that reason."

And speaking of the uniform rule of taxation the court
said:

"The fact that one county, town, or city is burdened with
a greater weight of taxation than another, is not a violation
of the rule of uniformity.    If it were, there would be no
lawful tax levied in the state, as nearly every municipality
raises a different amount of taxes upon the same amount of
taxable property, the amount depending upon the necessities
of the municipality or the will of its officers.    If it be
claimed that it would violate the rule of uniformity because
other counties do not pay taxes for the opening of state roads,
the rule of uniformity, if any, violated would not be the uni-
formity of taxation, but of the system of county government."

If there can be no valid objection based upon the nature of
the governmental function exercised by circuit judges, can
any substantial distinction be drawn between contributing to
the salary of the circuit judge and contributing to the other
necessary expenses of the administration of justice as in the
cases above cited?    The distinction, if any, between requir-
ing a county to pay part of such expenses, consisting of the
sheriff's, clerk's, referee's, and jurors' fees incurred by an-
other county, and paying part of the salary of the circuit
judge, seems very shadowy and unsubstantial.    If it be
placed upon the ground that a county may be required to pay
part of the expenses of administering justice in all contro-
versies, civil and criminal, originating within the county
wherever tried, the same can be said of the act of 1897 requir-

ing *Milwaukee County* to pay part of the salary of the circuit judge. But enough has been said to show that there is nothing in the nature of the governmental function exercised which prohibits the legislature from casting a portion of the expense of performing it upon the county.

Nor is there any objection to the imposition of this charge upon *Milwaukee County* found in the fact that other counties of a different class are not required to make such contribution to the expense of maintaining courts. Under this rule of uniformity of taxation it has never been doubted that classification is permissible, at least to the extent of entirely exempting one class and placing an uniform burden upon another. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557; *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37, 8 N. W. 833. Counties of 100,000 population or more constituting a single judicial district have the characteristics of a class in numbers, in wealth, in the amount of litigation therein, in the extra expense which they cause to the state, and in the advantages they receive from having the circuit court of several judges constantly within their boundaries. In *Crawford Co. v. Iowa Co.* 2 Pin. 368, it was considered, following *Hampshire Co. v. Franklin Co.* 16 Mass. 76, that the advantage of having a circuit court held within the boundaries of a county furnished a sufficient reason for the legislature imposing upon the latter county the expenses of holding court therein for the trial of cases originating elsewhere. There are many such local benefits or advantages. Such as reviewing local administrative acts or ordinances, acting as county judge (sec. 2447, Stats. 1898), acquiring title to toll roads (sec. 1311a, Id.), appointing commissioners to equalize assessments, or in local condemnation matters, etc., besides the advantage to suitors residing in the county. Besides, while a statute classification must be germane to the object sought to be accomplished by the statute, we have in the instant case a constitutional classification of circuits and circuit judges in this state by the con-

stitutional amendment of 1897, and such classification requires no aid of that kind to uphold it so long as it does not transgress the federal constitution. So without deciding that the legislature can or cannot impose upon particular counties the duty of paying part or all the expenses of the administration of state affairs by contributing to or paying in whole the salary of the state officer engaged in such administration, we find ample authority in the law for the uniform imposition upon a designated class of counties of the expenses of judicial administration with reference at least to causes originating in such counties. This is enough to support the legislation in question.

We find nothing in *Lund v. Chippewa Co.* 93 Wis. 640, 67 N. W. 927, in conflict with this conclusion. That was an action by a taxpayer, and, whether the legislation attacked was mandatory or permissive, either would defeat his action. The court held that it was at least permissive and in so doing assumed its invalidity as a mandatory statute. If we continue that assumption, still we must recognize a difference between a state asylum, which offers no privileges or advantages to the residents of the county in which it is located except the remote advantages of visiting unfortunate nonresident friends or relatives who may be confined therein, and a circuit court, which has from the origin of our state been recognized as an advantage to the county in which it is held and the expenses of which have in large part been absolutely imposed upon the counties in which the legal controversies arose from the beginning of our political existence, as shown by the cases herein cited. In short, we are obliged to set the cases of *Winnebago Co. v. Dodge Co., supra,* and *Waushara Co. v. Portage Co., supra,* and such like cases, against *Lund v. Chippewa Co., supra,* and ascertain whether there is any conflict between them. We find none when the subject of the legislation in each case is taken into consideration.

It follows that the county has shown no right of recovery

against the defendant, and the demurrer was properly sustained.

*By the Court.*—Order affirmed, and the cause remanded for further proceedings according to law.

The following opinion was filed May 11, 1912:

BARNES, J. (*dissenting*). I am unable to concur in all that is said in the opinion in this case. A circuit judge is just as much a state officer as is the governor, secretary of state, attorney general, state treasurer, a justice of this court, or a state senator. When all is said in the opinion that can be said in support of the acts that are challenged, we have the bare, bald question of the right of the legislature to single out a single county or a single circuit and arbitrarily compel it to pay a part of the salary of a state officer, when no other county or circuit in the state is required so to do. If this can be done I see no good reason why Dane county could not be obliged to pay the whole or a part of the salary of the governor or of the other state officers mentioned, or why any single senatorial district might not be called upon to pay the salary of the senator who represented it. Under the law which has been upheld the *County of Milwaukee* is compelled to levy $6,000 a year to assist in paying the salaries of state officers, while no other county or circuit in the state is mulcted with any such charge. This is not my idea of uniformity of taxation. I do not think that the cases of *Winnebago Co. v. Dodge Co.; Williams v. Dodge Co.; State ex rel. Ellis v. Thorne; State ex rel. Williams v. Samuelson; Waushara Co. v. Portage Co.,* and others cited in the opinion furnish any support for the conclusion reached in the instant case. All of these cases arose under general statutes applicable to the entire state and to every county therein. None of them singled out a certain county and required it to bear an extra portion of the general burden of taxation. This was the precise thing

which the court held could not be done in *Lund v. Chippewa Co.* 93 Wis. 640, 67 N. W. 927.

I freely concede that the legislature had the power to authorize the county to make the expenditure if it saw fit. The *Lund Case, supra,* and *Jensen v. Polk Co.* 47 Wis. 298, 2 N. W. 320, so hold. But there is a wide difference between saying to a county, you may make a donation for the benefit of the general public if you see fit, and saying you must do so. So I think the *County of Milwaukee* had the right to pay the additional compensation to the judges as long as it saw fit and to cease doing so whenever it chose.