# GEORGE F. REED and JAMES L. HECKEN-LIVELY v. CLYMENIA ALICE YOUNG, Appellant.

### Division One, March 15, 1913.

1. **REFERENCE: Purpose of Statute: Review of Findings.** The purpose of the statute was to prescribe the conditions upon which actions at law could be sent to a referee and the extent to which he could hear, decide and make report thereof.

2. **————: Compulsory: Related to Equitable Proceedings.** When a compulsory reference may be ordered under the statute, the court may exercise the supervisory power of a chancellor over the findings of the referee, since the purpose of such reference is akin to equitable jurisdiction, and in such case the appellate court has the full right to review the findings of the referee in the instances mentioned in the statute.

3. **————: ————: Matters Ex Delicto.** For the trial of demands originating in tort, however numerous and though separately itemized, a compulsory reference is not allowable.

4. **————: ————: ————: Suit on Account: Counterclaim for Damages.** Plaintiffs sued, in the first count, for a breach of an oral agreement to pay them for superintending the construction of a large residence, asking for two and one-half per cent of the cost of the building, alleged to be $28,000, and in the second count for their services as architects in furnishing the specifications for a gate entrance and superintending its construction, asking five per cent of its cost, which was $800. The answer admitted the contract, but charged that plaintiffs falsely represented themselves to be competent architects and possessed with skill, taste and competency to properly superintend the construction and agreed to personally perform that duty in a proper manner, and also agreed to keep a proper account of the amounts earned by laborers and contractors and to protect defendant from mechanics' and laborers' liens by timely written notice to her, and warranted that the construction would be skillfully and properly done, and then averred a breach of these agreements, and by way of counterclaim set out her damages in twenty-two specifications by number, itemizing the separate amount of each particular loss. *Held*, that the answer conceded the contract set out in the petition, and as a defense sets up only matters sounding in tort, and a reference could not be compelled without consent. The petition presented no issues which required the examination of a long account, besides the contract of employment was admitted by the answer; hence,

there was nothing left as a basis for a reference except the issues presented by the counterclaim, and as those issues sounded in tort, they were not referable.

5. ———: ———: Statute Strictly Construed: Long Account. The statute governing a reference without consent (Sec. 1996, R. S. 1909) is an enactment in derogation of the common law, and its application should not be extended by construction beyond its terms strictly construed. Under it a reference without consent may be ordered where a long account may be examined, or the taking of an account is necessary for the information of the court, or where a question of fact collateral to the pleadings arises. And the terms "examining a long account" are used in the statute in the sense in which they are ordinarily understood, and do not imply either an account stated or a bill of particulars, but refer to a series of charges made at various times concerning transactions between parties, or to an account kept by one party or the other, for which redress may be had by an action *ex contractu*.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

REVERSED AND REMANDED.

*George Pepperdine* and *Henry C. Young* for appellant.

(1) The court erred in forcing a compulsory reference herein and thereby depriving defendant of her constitutional right to a trial by jury. Thomas v. Reab, 6 Wend. 503; Van Rensalear v. Jewett, 6 Hill, 373; Silsmer v. Redfield, 19 Wend. 21; Brick v. Republic Co., 2 N. Y. Sup. Ct. 550; McCullough v. Brodie, 13 How. Pr. 346; Thornton v. Ins. Co., 7 Mo. App. 544; McMartin v. Bingham, 27 Iowa, 234; Townsend v. Hendricks, 40 How. Pr. 143; Evans v. Kalbfleisch, 16 Abb. Pr. (N. S.) 13; Dewey v. Field, 13 How. Pr. 437; Ross v. Mayor, 32 How. Pr. 164. (2) The referee and court erred in holding that the contract set forth in the petition stands confessed upon the pleadings. Wilkerson v. Farnsham, 82 Mo. 672; Laclede Const. Co. v. Iron Works, 169 Mo. 154; 6 Cyc. 49. (3) The proof of a contract, express or implied, with Heckenlively, one of the plaintiffs, while it is the proof of a con-

tract upon which the firm would be entitled to recover, if properly alleged, is not the proof of a contract with the firm, as alleged and upon the establishment of which a recovery depends. Faulkner v. Faulkner, 73 Mo. 335; Timber Co. v. Railroad, 180 Mo. 463; Cole v. Armour, 154 Mo. 350; Feurth v. Anderson, 87 Mo. 354; Beck v. Ferrara, 19 Mo. 30; Huston v. Tyler, 140 Mo. 264; Callahan v. Shotwell, 60 Mo. 400; Myers v. Railroad, 120 Mo. App. 292. (4) The proof of a contract to visit the house occasionally and to detail, in stone, the plans already prepared for the brick house and to make other alterations therein, and not to exercise such a supervision as would be given to a house in town, is not the proof of the contract alleged in the petition which is stated therein to be one of general superintendence according to plans and specifications theretofore prepared. Schneider v. Patton, 175 Mo. 723; Laclede Const. Co. v. Iron Works, 169 Mo. 154. (5) Nor can plaintiffs declare upon a contract and seek to recover for a performance thereof, and then be permitted to recover damages for a breach of the contract arising out of defendant's refusal to permit performance. Casgrove v. Realty Co., 175 Mo. 111; Cole v. Armour, 154 Mo. 350.

*V. O. Coltrane* and *Edgar P. Mann* for respondents.

(1) The court did not err in forcing compulsory reference of this case. The pleadings upon their face, in the twenty-two separate and distinct allegations of separate and distinct acts of alleged negligence on the part of plaintiff, and the twenty-two separate and distinct items of damages sought to be recovered on account thereof, required the examination of a long account on the side of respondents, and the case was properly referred. R. S. 1909, sec. 1996; Ittner v. Assn., 97 Mo. 561; Bank v. Owen, 101 Mo. 558; Small v. Hatch, 151 Mo. 306; Williams v. Railroad, 153 Mo.

487; Creve Coeur Co. v. Tam, 138 Mo. 385. (2) Appellant contends that the referee and court erred in asking that the contract set forth in the petition stand confessed upon the pleadings. We reply that in the first place the second amended answer and counterclaim admit the execution of the contract, and in the second place, it is immaterial how the referee and court so held, because the finding and judgment in favor of appellant upon the first count in the petition, which is based upon the contract, and the only finding of the referee and judgment of the court against appellant is on the second count in the petition, which does not involve the contract. (3) In reply to appellant's fifth point we say that while the petition is in two counts, the first count upon the contract, there was no recovery for the performance thereof, and that the referee found in favor of defendant upon that count. The second count was upon *quantum meruit,* and the referee found the reasonable value of the services under the testimony and rendered judgment therefor upon the second count in the petition. It was perfectly competent to join the two counts, one upon the contract and the other upon *quantum meruit,* in the same petition. Moore v. Mfg. Co., 113 Mo. 98; Brinkman v. Hunter, 73 Mo. 178; Globe v. Doud, 47 Mo. App. 439; Childs v. Critchfield, 66 Mo. App. 422; Foundry & Machine Co. v. Mfg. Co., 100 Mo. App. 421. In any event, if there had been an improper joinder appellant filed his answer and counterclaim, took no exceptions to the joinder at any stage of the proceedings, and filed no motion in arrest, and cannot now raise the question. Williamson v. Fisher, 50 Mo. 198; Bank v. Dillon, 75 Mo. 380; Thompson v. School District, 71 Mo. 495; Sweet v. Maupin, 65 Mo. 72.

## STATEMENT BY THE COURT.

The plaintiffs, a firm of architects, sued the defendant in two counts: (1st) For a breach of

248 Mo.—39

an alleged oral agreement to pay them for superintending the construction of a large residence according to the plans theretofore prepared, a sum equal to two and one-half per cent of the total cost of such residence, and a sum equal to five per cent of the cost of a lodge or gate entrance, for which latter structure plaintiffs also were to make plans, specifications and details; that the amounts so due were $150 and $900, respectively, totaling $1050, for which judgment was prayed. (2nd)   The same services were alleged to be performed at the special instance and request of defendant, and a judgment for the same amounts was demanded as the reasonable value of such services.

To this petition, the defendant answered (1st) denying all the allegations contained in both the first and second counts; and answered further, in substance, that defendant entered into a contract with a member of the plaintiff firm to superintend the construction of her residence; that said firm avouched its competency as architects, and that the member thereof with whom defendant contracted was possessed of skill, ability and taste to enable him to perform the services of superintending architect in a proper manner, and that he would discharge those duties; that this member of the plaintiff firm agreed personally to supervise the work and to keep proper account of the amounts earned by the laborers and contractors and the material furnished, and to protect defendant from mechanics' and laborers' liens by giving her timely notice so that she could retain the proper amount to answer for these; that he would let all the contracts; that he would warrant that all the plans, details, specifications and drawings should be skillful and properly made and done, and should not be changed except by the consent of the defendant; that his employment should continue only so long as defendant might desire.   Defendant averred that, notwithstanding such covenants, the said member of the plaintiff firm was

incompetent to perform the duties assumed by him; and by his negligence, unskillfulness and fraud injured and damaged defendant in twenty-two instances, each of which is specifically stated in the answer by number and with a separate itemization of the amount of each particular loss, in sums varying in amounts but aggregating $10,537.61. Each and all of said items of defense were, by reiteration, made the basis of damages for the respective amounts by way of a counterclaim. The plaintiff took issue by reply. The cause, over the objection of defendant, was sent to a referee. Defendant excepted on the ground that it deprived her of the constitutional right of a jury, and saved the point for review by a term bill of exceptions and at every step in the cause and in the motion for new trial.

The amended report of the referee contains a finding that the contract set up in plaintiffs' petition was confessed in the answer; that it was entered into with defendant in February, 1904, and continued until December, 1904, when the representative of plaintiffs was discharged before the full performance of the work for which plaintiffs were engaged; that the cost of the residence building was $28,000; that the cost of the construction of the lodge was $800; that plaintiffs were entitled to receive five per cent upon the $800 "as the reasonable value for plaintiff's work upon this part of the work;" that plaintiffs were entitled to two and one-half per cent of $28,000 "as the reasonable value of plaintiff's work performed in the superintending the superstructure of the residence." The report further disclosed that the referee found against the twenty-two separate defenses included in the answer, and against each of said items as the basis of the counterclaim filed by defendant, and that plaintiffs were entitled to receive $740. This report was confirmed, and judgment was rendered thereon. Defendant excepted to the report and its confirmation, and

has appealed to this court on the ground, among oth ers, that a. constitutional question arose upon the action of the court in depriving defendant of a jury trial.

## OPINION.

### I.

BOND, J. (After stating the facts as above).— We do not understand it to be now claimed that the statute permitting a trial court, upon the application of either party or of its own motion, to direct a reference in the cases specified, of any specific question of fact or the whole issues is an unconstitutional enactment, since that point has been heretofore disapproved. [Tinsley v. Kemery, 170 Mo. l. c. 317; Ice Co. v. Max Tamm, 138 Mo. 385.] But we take the position of appellant to be, that the statute (R. S. 1909, sec. 1996) has. been unconstitutionally applied in the case at bar, and, hence, appellant has been deprived of a jury trial of certain issues not referable under the terms of the statute.

Reference.

The purpose of the statute was to prescribe the conditions upon which actions at law could be sent to a referee and the extent to which he could hear, decide and make report thereof to the court. It was not designed to regulate the conduct of suits in equity, for the trial of these was not affected by the constitutional guaranty of jury trials "as heretofore enjoyed," since this language did not deprive circuit courts sitting in equity of any jurisdiction or method of procedure which had been enjoyed or exercised in the administration of equitable jurisdiction; and the right and power to refer issues in equitable actions was a distinct function of chancery courts. [Ely v. Coontz, 167 Mo. l. c. 376; 16 Cyc. 434.] The object of the statute was to enable the circuit judge on the trial of legal actions to refer certain issues *in invitum* as to one or both of the parties litigant. When a compulsory reference may be had under this statute, the court en-

joys and may exercise the supervisory power of a chancellor over the findings of the referee whether the issues submitted be legal or equitable, or whether they were committed to the referee by the consent of both parties or by the order of the court without the consent of either. [Williams v. Railroad, 153 Mo. 1. c. 495.] On the other hand, when there is a reference by consent of other issues than those which are the subject-matter of a compulsory reference, then the report of the referee stands as the verdict of the jury and cannot be set aside as being opposed to the weight of the evidence. This distinction in the power of review of the court over the reports of referees in the two classes of cases grows out of the fact that the purposes for which references, *in invitum,* may be ordered are (especially as to the "examination of a long account") akin to the head of equitable jurisdiction (bill for an accounting) which grew out of the right to apply to that court owing to the inadequacy of the remedy at common law. [Bispham's Equity (7 Ed.), sec. 482; Fetter on Equity, pp. 247, 248, 249, sec. 164.] The latter author referring to this similarity, adds: "It should also be noted that now, in most of the American States, as well as in England, courts are empowered in legal, as well as in equitable, actions to direct a trial before a referee where the examination of a very long account on either side is necessary." We think the conclusion is clear that the close analogy of the statutory provision for a compulsory reference to the jurisdiction for an accounting in equity is the reason for the different scope of review of the findings of the referees in the two cases. And, hence, it has been well decided that the trial and appellate courts have the full right to review the finding of the referee in the instances mentioned in the statutes, to-wit: (1) where a long account is to be examined; or (2) an account to be taken for the information of the court; or (3) where a question of fact collateral to the pleadings

arises, which is exercised on appeals of equitable actions.

II.  The question on which this appeal must turn is whether the demands set up in the counterclaim of defendant were of such nature as to entitle the court to compel their submission to a referee (Investment Co. v. Bank, 96 Mo. App. 125), for there was

Counterclaim:
Matters
of Tort.

nothing in the petition which authorized the court to direct a reference, since it only alleged two items of indebtedness; 1st, under a contract; and, secondly, for a *quantum meruit*.  This leaves us to determine from the allegations of the answer, including the counterclaim, whether the issues therein presented could be referred without the consent of the appellant.  Each of these issues was based upon allegations of negligence and wrongdoing or fraud of the plaintiffs and was connected with the subject-matter of the action and therefore properly included in a counterclaim. [Heman v. McNamara, 77 Mo. App. l. c. 7; Hamlin v. Walker, 228 Mo. 611.]  They did not arise only *ex contractu* but accrued from the torts and negligences claimed to have been practiced by plaintiffs.  They presented the only controversies in the case, for the answer of defendant admitted in effect the employment of a member of the plaintiff firm to render supervisory and constructive services in the building of the residence of the appellant, and a lodge gate entrance; and the only defense and counterclaim made was the itemization of damages alleged to have been caused by the incompetence, negligence and wrongdoing of the respondents, for which, it was alleged, respondents were rightfully discharged.  This being the nature of the triable demands under the pleadings in this case, it is evident that they necessarily originated *ex delicto*.  The question to be solved, therefore, is whether demands of that nature, however numerous

and though separately itemized, constitute "a long account" for which the statute authorizes compulsory reference, for it is clear that there is no other language in the statute permitting such a reference upon which the order made in this case could be sustained. [R. S. 1909, sec. 1996.]

It was ruled at an early date in this State that "actions for torts are not referable." [Martin v. Hall, 26 Mo. l. c. 389.] This principle was conceded by Judge BLACK in the subsequent case, Ittner v. St. Louis Exposition Assn., 97 Mo. l. c. 567, where the language of the statute permitting the court to direct a reference where the trial required "the examination of a long account" was under review. In that case plaintiff brought an action for demands arising *ex contractu* and which contained over ninety items. The answer set up a counterclaim "for damages for alleged inferior materials and workmanship in parts of the structure." It was held that the *petition* determined the character of the action; that the counterclaim for damages was but an incident and could not defeat the right of plaintiff to a reference based upon the nature of the allegations contained in his petition. On that ground, alone, the court held that the matter was a proper one for reference under the statute, but made this significant statement: "If the plaintiff's account stood conceded, as to the work done and materials furnished and the price to be paid, and the defense stood alone on alleged inferiority of materials used and workmanship, another and a different case would be presented." Plainly, there is nothing in the ruling in that case nor in the facts then in judgment which abated the force of the principle conceded in that case, "that actions sounding in tort are not embraced in this and like statutes, though it may become necessary to consider many items of damage; for it is considered that such items of damage do not constitute an account as the term is used in the statute." [Ittner v.

St. Louis Exposition Assn., 97 Mo. l. c. 567.] In the case at bar plaintiffs' petition did not present any issues which required "the examination of a long account;" and, hence, presented no case whatever for a reference. The contract of employment by plaintiff, alleged in his petition, was held to be admitted by the answer, both by the referee and the trial judge. This left nothing as a basis for a reference except the issues presented by appellant's counterclaim; and as those issues sounded in tort, they were not referable without consent. [Foster v. Railroad, 143 Mo. App. l. c. 551; 34 Cyc. 787, and cases cited; Roth Tool Co. v. Spring Co., 146 Mo. App. l. c. 32; Tunison v. Snover, 56 N. J. L. 41; Camp v. Ingersoll, 86 N. Y. 433; Andrus v. Home Ins. Co., 73 Wis. 642.]

In every case in which the construction of this statute has been before this court, it has been uniformly ruled that it is an enactment in derogation of the common law, and that its application should not be extended by construction beyond the strict terms of the act. The terms "examining a long account" are used by the statute in the sense in which they are ordinarily understood, and do not imply either an account stated or a bill of particulars, but refers to a series of charges made at various times covering transactions between the parties, or to an account kept by one party or the other, for which redress might be had in actions *ex contractu*. The statute did not intend that actions sounding in tort, which juries are peculiarly adapted to try (R. S. 1909, sec. 1968), should be sent to a referee against the consent of the litigants. Such was not its construction prior to the adoption of the present Constitution (Martin v. Hall, 26 Mo. l. c. 389), and to give it that construction now would violate the constitutional guaranty that the right of trial by jury should remain inviolate as heretofore enjoyed. [Constitution, art. 2, sec. 28.]

Apt and seasonable objections were made to the

refusal of the court to permit appellant to have a jury trial. For the error in so ruling, judgment is reversed and the cause remanded.

Woodson, P. J., and Lamm and Graves, JJ., concur.