**Edward D. DURWOOD, Plaintiff-Respondent,**

v.

**H. W. DUBINSKY, Irwin Dubinsky, Ruth Dubinsky, Executrix of the Estate of Barney Dubinsky, Deceased, Dubinsky Brothers Theatres, Inc., a Corporation, Defendant-Appellants,**

*and*

**Commerce Trust Company, a Corporation, Defendant.**

No. 44509.

Supreme Court of Missouri.

Division No. 2.

May 14, 1956.

Motion for Rehearing or to Transfer to Court En Banc Denied and Motion to Modify Opinion Denied July 9, 1956.

B. L. Kaufmann, St. Joseph, Sam Mandell, Harry L. Thomas, Kansas City, for appellants, Culver, Phillip, Kaufmann & Smith, St. Joseph, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel.

William G. Boatright, Terence M. O'Brien, Kansas City, for respondent.

STOCKARD, Commissioner.

This suit was brought in the circuit court of Jackson County, Missouri, by Edward D. Durwood, hereafter referred to as plaintiff, against his two brothers, H. W. Dubinsky and Irwin Dubinsky, and also against Ruth Dubinsky, executrix of the estate of Barney Dubinsky, deceased (another brother of plaintiff), Dubinsky Brothers Theatres, Inc. and Commerce Trust Company. All defendants are appellants here except Commerce Trust Company. Over the objections of appellants, the entire case was referred to a referee. The record before this court is voluminous. It consists of twenty-three volumes of testimony, pleadings and other papers, and more than 2,000 exhibits.

For several years prior to May 9, 1946, plaintiff, Stanley H. Durwood and Marjorie Grant (plaintiff's children), Irwin Dubinsky, H. W. Dubinsky and Barney Dubinsky were partners and were engaged in operating certain theatres under the name, "Durwood-Dubinsky Brothers Theatres." A dispute arose concerning the ownership of the theatrical properties, and in an effort to establish their interest Barney, H. W. and Irwin Dubinsky brought suit against Edward D. Durwood, Stanley H. Durwood, Marjorie Grant and several corporations which held the title to, or leases of, some of the theatrical properties. During the trial of that case a settlement was reached, a consent decree entered, and a contract, dated December 7, 1946, was entered into setting out the terms of the settlement. That contract provided that the Durwood-Dubinsky partnership be terminated as of May 8, 1946, and that Barney, Irwin and H. W. Dubinsky disclaimed any right, title, ownership or interest in or to the various theatrical properties employed or used by the former partnership. It was also provided that Edward D. Durwood was to pay to the three Dubinsky brothers the sum of $400,000 and an additional sum equal to 25% of the net profits derived from the operation of certain named theaters earned in the period from January 1, 1946 to May 8, 1946. In addition, Edward D. Durwood agreed to employ each of the Dubinsky brothers for a term beginning May 9, 1946 and expiring June 30, 1949, and as compensation therefor to pay them a sum equal to 25% of the net profits from the operation of the same theaters during the period of employment, 10% to be paid to Barney and Irwin Dubinsky each, and 5% to H. W. Dubinsky. The method of computing net profits was set out in detail, but it was provided that in the event of an "actual sale" of any of the named theatrical properties the compensation of the Dubinsky brothers should be computed on the basis of the experienced profits for the twelve months preceding the sale. It was also agreed that the Dubinsky brothers could, during their employment, acquire any properties of any kind or character, provided that they did not "engage in any other business, theatrical or otherwise," and the Dubinsky brothers were not to engage in the theatrical business "directly or indirectly" from May 9, 1946 through July 1, 1959 in four named cities, including St. Joseph, Missouri. Plaintiff was required by the agreement to deposit certain notes and corporate stock in escrow with the Commerce Trust Company as a pledge to secure the performance of his contractual obligations. The contract also provided that Edward D. Durwood was to have the sole and exclusive right to use the names "Dubinsky Bros." and "Dubinsky Bros. Theatres" in the four named cities until June 30, 1959.

On July 17, 1948 Barney Dubinsky died, and his right to receive a sum equal to 10% of the net earnings terminated. His executrix is a party to this proceeding, and when reference is made herein to "Dubinsky brothers" the term includes Irwin and H. W. Dubinsky and also either Barney Dubinsky or his executrix.

In October 1948 H. W. and Irwin Dubinsky filed separate suits against Edward D. Durwood, one in the federal court and the other in the circuit court of Buchanan County, seeking declaratory judgments that the compensation due under the contract had not been paid. This present action was then commenced by plaintiff on November 3, 1948 against the Dubinsky brothers and Commerce Trust Company. The petition was in one count and it alleged that plaintiff had delivered to the Commerce Trust Company the corporate stock and notes for the purposes provided for in the contract, that plaintiff had paid all that was due to the Dubinsky brothers and that all obligations on his part had been met, and that he was entitled to receive back from Commerce Trust Company the security he had pledged to guarantee performance of the contract on his part, but because of the two pending suits against him and the claims of the Dubinsky brothers a cloud had been cast on the title to his property pledged as security. Plaintiff prayed that the Dubinsky brothers be ordered and directed to exhibit all claims and demands against the pledged property, that it be ascertained if any amount be owed by him, and that upon payment thereof, the Commerce Trust Company be ordered to deliver to plaintiff all the property then pledged with it. By answer, Commerce Trust Company stated an unwillingness to re-deliver the pledged property to plaintiff without the direction of the court.

The other defendants filed numerous motions, all of which were overruled, which challenged, among other things, jurisdiction and venue on the ground that Commerce Trust Company was not a real party in interest and was joined fraudulently. The Dubinsky brothers, still protesting jurisdiction and venue, filed separate, similar answers and cross petitions. In each answer it was denied that the Dubinsky brothers had been paid in full the amounts due them under the contract. In each cross petition it was contended that plaintiff had failed to include various named items of gross receipts and had improperly deducted numerous specified items as expense in arriving at net profits. The court was asked to declare the rights and relations of the parties; that plaintiff be required to make his records available for audit; that plaintiff be required to render a true and correct account; and that a lien be declared on the property of plaintiff held by Commerce Trust Company.

On July 10, 1950 plaintiff filed what he called a "supplemental petition" in which he alleged that he was the owner of the trade names "Dubinsky Bros." and "Dubinsky Bros. Theatres," and that the Dubinsky brothers had agreed that neither would, directly nor indirectly, engage in the theatrical business in four cities, including St. Joseph, Missouri, for a period expiring July 1, 1959; that pursuant to the contract dated December 7, 1946, as against each of the Dubinsky brothers, plaintiff had the sole and exclusive right until June 30, 1959 to use the name "Dubinsky Bros." or "Dubinsky Bros. Theatres", in the named cities; that about September 13, 1949, Irwin Dubinsky and H. W. Dubinsky formed a Missouri corporation by the name of "Dubinsky Brothers Theatres, Inc." with its registered office at St. Joseph, Missouri; and that these defendants had acquired motion picture theaters outside of the named cities and were engaging in the theatrical business from the place of business of said corporation in St. Joseph, Missouri, all in violation of said contract and for the purpose of perpetuating a fraud upon plaintiff and upon the public. Dubinsky Brothers Theatres, Inc. was added as a new party defendant. Plaintiff requested that the defendants named therein be enjoined from doing a theatrical business in St. Joseph, Missouri, and from using the name "Dubinsky Brothers Theatres, Inc." The trial court issued a temporary injunction as requested.

On February 11, 1953 the Dubinsky brothers filed what they called their "joint, separate supplemental cross-petitions" in which they alleged that plaintiff had made "actual sales" in January 1947 of all the theaters within the meaning of the contract and that they were entitled to receive compensation based on the profits of the theaters during the twelve months preceding the sales.

Plaintiff filed what he designated to be an answer to the supplemental cross petitions and denied that the Dubinsky brothers were entitled to compensation other than what he had paid them, and he also alleged "for further answer" that the Dubinsky brothers had violated the contract by not giving their exclusive services to plaintiff, by engaging in the theatrical business during the term of their employment under the name of "Dubinsky Brothers Theatres," and by reason of which said Dubinsky brothers "are in equity and good conscience precluded from recovery."

It was at this stage of the pleadings that the trial court, over the objections of appellants, referred "this cause" to a referee with directions "to hear and decide the whole issue herein and to report his findings of fact and his decision thereon to this (the trial) court." Trial was commenced before the referee on June 1, 1953 and was concluded on August 18, 1953, a number of recesses intervening. During this hearing and on July 28, 1953, plaintiff filed his "second supplemental petition" in which he alleged that he was the plaintiff in another and different suit pending in the United States District Court against Twentieth Century Fox Film Corporation, and others, seeking treble damages with respect to the Roxy Theater because of alleged monopolistic practices, and that although the Dubinsky brothers had conveyed, assigned and transferred all rights in the theatrical properties to plaintiff, they were claiming an interest in that suit. Plaintiff prayed for a judgment declaring that the Dubinsky brothers had no right, title or claim in or to any proceeds of that suit. After a compulsory reference of this cause of action the Dubinsky brothers answered and disclaimed any interest in the suit if there had been an "actual sale" of the theater.

Subsequent to the hearing before the referee plaintiff filed an "amended petition" in four counts, and alleged that the petition was filed for the purpose of consolidating plaintiff's pleadings and the issues raised thereby, and to conform the pleadings to the proof and the issues tried. The first three counts were substantially the same as the original petition and the two "supplemental petitions." Count IV purported to allege a cause of action for a constructive trust, and alleged that Irwin and H. W. Dubinsky, in conspiracy with others, violated the contract of December 7, 1946 and engaged in the theatrical business prior to July 1, 1949 and had built, acquired and operated theatrical property and received profits therefrom. The prayer in this count was that the court impress the properties obtained thereby, and the rentals and profits derived therefrom, with a constructive trust in favor of plaintiff. Appellants reserved all objections previously made to the reference of the issues and to jurisdiction and venue and also contended that the amended petition contained new matters. Their answers and cross petitions were substantially the same as previously filed.

█ Appellants' first contention is that plaintiff's original petition failed to state a claim for relief against Commerce Trust Company, the only defendant which was a resident of Jackson County, Missouri, and therefore the Circuit Court of Jackson County was without venue.

█ Section 527.110 (all statutory references are to RSMo 1949, V.A.M.S., unless otherwise stated) provides that when declaratory relief is sought *all persons* shall be made parties who have or claim any interest which would be affected by the declaration. Commerce Trust Company was obligated by the terms of the pledge agreement, a copy of which was attached to the petition, to deliver the pledged property to the Dubinsky brothers "in the event of any default" by plaintiff of his obligations under the contract, and to return the pledged property to plaintiff if he did not default. Under the circumstances here, a claim by the Dubinsky brothers that plaintiff had not paid to them the compensation due under the contract was in itself a claim against the pledged property. If Commerce Trust Company was not made a party it would not be bound by the judgment entered, Section 527.110, and even if it claimed merely

as a stakeholder it had a right and interest in knowing to whom to deliver the property. State ex rel. and to Use of Clay County State Bank v. Waltner, 346 Mo. 1138, 145 S.W.2d 152. It was a proper party defendant. Section 508.010 provides that when there are several defendants, some residents and others nonresidents of the state, which was the situation here, suit may be brought in any county of this state in which any defendant resides. The objections of the Dubinsky brothers to the venue of the circuit court as to the original petition were correctly overruled.

■ When appellants filed their answers they each filed a "cross petition," and they reserved the objections previously raised by motion. They now contend that they did not enter a general appearance and thereby subject themselves to the jurisdiction of the court to permit the judgment entered against them on what was later denominated as counts II, III and IV of the amended petition.

Section 509.290 specifies that objections to jurisdiction and improper venue may be raised by motion, and Section 509.340 provides that no objection when properly raised by motion is waived by "pleading over or entering into the trial of the merits." In this case the objections raised by motion were not waived by pleading over and entering into the trial of the merits, Johnson v. Fire Ass'n of Philadelphia, 240 Mo.App. 1187, 225 S.W.2d 370, but upon review we find that those objections were without merit. Therefore, appellants are in the same position by filing their answers and cross petitions as they would have been if no objections by motion had been made at all.

Appellants next contend that this case was not referable under Section 515.020, and that the trial of all the issues in the various counts of the amended petition before a referee deprived them of their right to trial by court or by court and jury. Two of the counts in the amended petition (counts II and IV) were suits in equity and no question of trial by jury is there involved. We shall consider the correctness of the reference of each count in the order in which the issues were first raised by the pleadings.

■ Count I corresponded with the original petition and sought relief in the form of a declaratory judgment. In such a suit an issue of fact is to be tried and determined in the same manner as issues of fact are tried and determined in other civil actions, Section 527.090, which in proper cases would include trial by jury. Crollard v. Northern Life Ins. Co., 240 Mo.App. 355, 200 S.W.2d 375. However, the compulsory reference of the issues of fact in an action at law, otherwise triable by a jury, does not deprive a litigant of his constitutional right to trial by jury if the reference is authorized by Section 515.020. Creve Coeur Lake Ice Co. v. Tamm, 138 Mo. 385, 39 S.W. 791; Hancock v. State Highway Commission, 347 Mo. 944, 149 S.W.2d 823; Vannoy v. Swift & Co., 356 Mo. 218, 201 S.W.2d 350; Notes, 25 L.R.A. 67 and 13 L.R.A.,N.S., 146. Therefore, in a law case the first question is whether the reference is authorized by Section 515.020.

Section 515.010 provides that all or any of the issues of fact in an action may be referred upon the written consent of the parties. Section 515.020, pertaining to compulsory reference, provides that "Where the parties do not so consent, the court may, upon the application of either, or of its own motion, direct a reference in the following cases: (1) Where the trial of an issue of fact shall require the examination of a long account on either side, in which case the referees may be directed to hear and decide the whole issue, or to report upon any specific question of fact involved therein; * * *."

■ Whether a compulsory reference may be ordered must be determined from the pleadings and the issues raised by the parties, Rice v. Robertson, Mo.App., 48 S.W.2d 172, and the court must assume that the testimony on the issues involved will take the fullest latitude embraced within the pleadings. Bank of Oak Ridge v. Duncan, 328 Mo. 182, 40 S.W.2d 656, 658. See also McCormick v. City of St. Louis,

166 Mo. 315, 65 S.W. 1038; Hancock v. State Highway Commission, supra; George L. Cousins Contracting Co. v. Acer Realty Co., Mo.App., 110 S.W.2d 885. There can be no question but that the trial of the issues of fact tendered by the original petition, the cross petitions to the original petition and the respective responsive pleadings thereto, required the examination of a long account within the meaning of that term as used in Section 515.020. The items of income and expense involved covered a period in excess of three years and involved the operations and accounts of thirteen separate theatrical properties. Both sides requested an accounting. In order to resolve the issues thus presented it was necessary for someone to place on the proper side of the ledger all items of income and expense for the entire period for each theater, and to determine therefrom the net profits as provided by the terms of the contract. This accounting could not be made without resort to all of plaintiff's books of account, and the issues involved not only the classification of items as income or expense, but also the correctness of the amounts. Over a period of several weeks hundreds of book entries, canceled checks, contracts, items of travel and entertainment expense, etc. were taken up and considered item by item. No constitutional right of trial of the facts by a jury was violated by the reference of the whole issue in the original petition pertaining to the examination of the long account.

The first supplemental petition (count III in the amended petition) was a separate and distinct cause of action for an injunction. It had no relation to or connection with the original petition except that the subject matter of each pertained to the same contract. The result of the accounting under the original petition would have no bearing on the result of this injunction suit, and vice versa. The trial of no issue of fact in the injunction suit required the examination of a long account. The trial judge heard the evidence in support of the application for a temporary injunction, but the referee heard the only evidence on the permanent injunction.

Pursuant to what authority did the trial court refer this suit in equity to a referee? Plaintiff contends that at the time of the order of reference "there were no separate counts" and that the case justified a compulsory reference of "all the issues raised, whether legal or equitable or both" because it is the petition which determines the character of the action, which was primarily for an accounting, and a reference carries "all issues on either side to the referee where they are all incident to the primary cause of action." In support of this position plaintiff cites Ittner v. St. Louis Exposition & Music Hall Ass'n, 97 Mo. 561, 11 S.W. 58, and McKinley v. Durbin, Mo.App., 231 S.W.2d 286.

We consider it immaterial that plaintiff labeled his suit for an injunction as a "supplemental petition." It should have been pleaded as a separate count (as was subsequently done in the amended petition) and we shall treat it as such. Neither can we agree that the issues of the injunction suit were "incident" to the issues in the original petition for a declaratory judgment and an accounting. In the Ittner and McKinley cases the petition required the trial of an issue of fact involving the examination of a long account. In each case the defendant filed a counterclaim, which standing alone, would not have been referable, but in each case the counterclaim, if defendant was successful, constituted a defense to the plaintiff's claim. In each case it was held that the petition determined the character of the action and that a reference could not be defeated by an answer which set up fraud as a defense and a counterclaim based on that fraud. Neither of these cases presents the situation we have here, and neither supports the theory that a plaintiff can join in one petition two separate and distinct causes of action, one referable and one not, and then force the defendant to try all the issues before a referee.

Plaintiff cites two New York cases, neither of which supports his position. In Place v. Chesebrough, 63 N.Y. 315, the complaint was in three counts: The first

was for money advanced and paid for defendant's benefit, the second for services rendered, and the third for money paid at defendant's request for the support of defendant's son. The first and third counts involved a long account. The second did not. The New York court held: "Although the complaint states the claim [for services rendered] as a separate and distinct cause of action, it is really and in fact but one of the items of plaintiff's demand, and is properly stated as such in the bill of particulars. It is no more a separate cause of action than many of the items of the account furnished. * * * (I)t is apparent that this is not a case where causes of action which are referable are joined with one which is not, * * *." To the same effect is Connor v. Jackson, 53 App.Div. 322, 65 N.Y.S. 693, the other New York case cited by plaintiff. What we believe to be the sound and correct rule is stated in Evans v. Kalbfleisch, 16 Abb.Prac., N.S., N.Y., 13, that "*all* the causes of action stated in the complaint must be referable. If part or only one issue is referable, the court cannot refer the others, but as was said in Townsend v. Hendricks [40 How. Pr. 143] if such referable issues should ever require examination, a reference can be ordered as to those, after the trial of the other issues." The same rule is expressed in Cooper, Referees and References, § 18. See also Flanders v. Odell, 16 Abb.Prac., N.S., N.Y., 247 and 76 C.J.S., References, § 22, c.

Plaintiff contends that if the issues of this injunction suit were not referable by reason of Section 515.020, the trial court could refer this equity suit in the exercise of its "ancient equitable powers and equitable jurisdiction." In support of this he cites 2 Houts, Missouri Pleading and Practice, § 382, wherein there is a statement to the effect that although this court once held that an equity case is referable only pursuant to what is now Section 515.020, it has since recognized the inherent power of a court of equity to refer any case independent of the statute. In support of this statement the author cites three cases which we now consider in their chronological order.

Caulk v. Blyth, 55 Mo. 293, involved a compulsory reference of a suit in equity to correct the description in a deed. On appeal the author of the opinion said: "From an inspection of the evidence as reported by the referees, I have no doubt the justice of this case is on the side of the plaintiff. But the court had no authority on its own motion to refer it. The whole subject of reference is governed by the statute." For this reason the case was reversed and the cause remanded.

Reed v. Young, 248 Mo. 606, 154 S.W. 766, 768, involved an action at law. It was held that the examination of a long account was not required and that a compulsory reference was improper. During the discussion, the author of the opinion, Judge Bond, made the following comment: "The purpose of the [reference] statute was to prescribe the conditions upon which actions at law could be sent to a referee, and the extent to which he could hear, decide, and make report thereof to the court. It was not designed to regulate the conduct of suits in equity, * * * since this language did not deprive circuit courts, sitting in equity, of any jurisdiction or method of procedure which had been enjoyed or exercised in the administration of equitable jurisdiction; and the right and power to refer issues in equitable actions was a distinct function of chancery courts." This statement was wholly obiter dictum. Caulk v. Blyth was not mentioned.

Johnston v. Star Bucket Pump Co., 274 Mo. 414, 202 S.W. 1143, 1144, was a law case. A reference was made without objection. On appeal it was contended that since the suit involved a long account it thereby became a suit in equity. In reviewing the history of the reference statutes, Judge Graves pointed out that in Laws of Missouri, 1825, and until 1849, there were two practice acts, one entitled " 'Practice at Law' ", and the other entitled " 'Practice in Chancery.' " He then said: "Now, bearing in mind the two distinct acts, one for law matters and one for chancery matters, let us trace the real origin of our reference law." After quoting a provision from the practice act of 1825 governing practice at

law he stated that it was the "first reference statute", and after commenting on its provisions said: "Thus the origin of references in Missouri, and they had their place only in actions at law. This was true because in chancery cases there was no need for a referee. The court had its master in chancery, to whom could be referred all matters, including the taking of an accounting, if such was necessary in the cause pending in chancery." Plaintiff quotes this last statement in support of his position that a court may, under its general equity powers, now refer any equitable cause of action to a referee. However, when this statement is read in context it does not support plaintiff's position. No mention was made of Caulk v. Blyth.

We believe it necessary, or at least advisable, to re-examine the question whether an equity case is referable notwithstanding the provisions of Section 515.020. As previously mentioned, prior to 1849 there were two practice codes, one for actions at law and one for suits in equity. Each code contained provisions pertaining to the reference of certain cases, those at law to referees and those in equity to a commissioner. In 1849 the distinctions between the different actions at law, and between actions at law and suits in equity were abolished and one practice code was adopted governing the procedure in all civil actions. Laws of Missouri, 1848–49, pp. 73–109. Article XVI of that code pertained to trial by referees. The present provisions for compulsory reference, Section 515.020, first appeared in 1855, Section 18, Art. X, chap. 128, RSMo 1855, and have since remained unchanged. In the code of civil procedure of 1855, and remaining unchanged until 1943, were the two following quoted provisions ·(with italics added): "An issue of fact in an action for the recovery of money only, or of specific real or personal property, *must* be tried by a.,jury, unless a jury trial be waived, *or a reference ordered, as hereinafter provided.*" Section 12, Art. X, chap. 128, RSMo 1855 and Section 1099, RSMo 1939, and *"Every other issue must be tried by the court,* which, however, may take the opinion of a jury upon any spe-

cific question of fact involved therein, by an issue made up therein for that purpose, *or may refer it, as hereinafter provided",* Section 13, Art. X, chap. 128, RSMo 1855 and Section 1100, RSMo 1939. The first of the above quoted provisions referred to actions at law, and the second necessarily included every suit in equity. By these provisions it was specifically provided that an issue could be referred to a referee for trial only "as hereinafter provided", or, in other words, subject to the statutes pertaining to references by consent and to compulsory references. It seems obvious that when the two practice codes which were in effect prior to 1849, one pertaining to practice at law and the other pertaining to practice in chancery and each containing provisions for reference, were repealed in 1849 and one practice act enacted, applicable to law and equity cases and containing new provisions for reference, the intention was to authorize the reference of any case only as therein provided. In addition, the two provisions pertaining to the trial of cases by a jury, by the court or by a referee clearly made it mandatory that every issue in an equity case (except those submitted to a jury) be tried by the court unless a reference was authorized. We cannot escape the conclusion that the result reached in Caulk v. Blyth that the "whole subject of reference is governed by the statute" was correct.

 Was this rule changed by the adoption in 1943 of the present code of civil procedure? Chapter 6 of RSMo 1939 contained what was designated as "Civil Procedure—General Code" and it contained twenty articles, one of which, Article 15, was identical with the present provisions of ·chapter 515, RSMo 1949, V.A. M.S., entitled "Referees and Receivers." In 1943 the Legislature repealed ten of the articles of chapter 6, RSMo 1939, and enacted new provisions in lieu thereof, but Article 15 was not repealed and was not changed. If there was a change in the rule pertaining to references by the 1943 act it resulted from the repeal of Sections 1099 and 1100, RSMo 1939. In lieu of Section 1099 there was enacted what is

now Section 510.190, which, in the parts here material, provides that "The right of trial by jury as declared by the constitution or as given by a statute shall be preserved to the parties inviolate." In lieu of Section 1100 there was enacted what is now Section 510.310. This section sets forth in detail the procedure to be used in the trial of cases in which the jury is waived and in equity cases. The present code of civil procedure, when read in its entirety, including chapter 515 pertaining to references, clearly indicates that one of the purposes of the revision in 1943 was to eliminate differences in procedure between law cases tried before the court without a jury and equity cases. This is clearly evidenced by enacting a single section, 510.-310, pertaining to the procedure to be used in all cases tried without a jury, and it is further evidenced by the provision in said section that the scope of review in all such cases shall be the same. We, therefore, are compelled to conclude that the amendments of 1943 to the code of civil procedure were not intended to and did not change the authority of a court as it existed prior to 1943 to refer an equity case, and that the authority for compulsory reference of issues in any action, whether of law or equity, is now governed by Section 515.020.

This precise question was presented to the Supreme Court of New Mexico in Tietzel v. Southwestern Construction Company, 43 N.M. 435, 94 P.2d 972, 126 A.L.R. 307. The suit was in equity and it was contended that the court could refer the case under its general equity powers. The court commented that New Mexico had adopted its reference statute from Missouri, and in a carefully worded and exhaustive opinion it was held that the reference statute was exclusive. This is in accord with the weight of authority. See Winnebago County v. Dodge County, 125 Wis. 42, 103 N.W. 255, overruling Druse v. Horter, 57 Wis. 644, 16 N.W. 14; Killingstad v. Meigs, 147 Wis. 511, 133 N.W. 632, Ann.Cas.1912D, 1133; Williams v. Benton, 24 Cal. 424; Hastings v. Cunningham, 35 Cal. 549; Thayer v. McNaughton, 117 N.Y. 111, 22 N.E. 562; Camp v. Ingersoll, 86 N.Y. 433; Fromer v. Ottenberg, 36 Misc. 631, 74 N.Y.S. 366; Avery v. Sand, 9 App.Div. 622, 41 N.Y.S. 53; O'Reilly v. Kingston, 30 Hun., N.Y., 508; Annotation, 126 A.L.R. 314; Note, Ann.Cas.1912D, 1136; 34 Cyc.References § 2; 76 C.J.S., References, § 10.

It has uniformly been held that it is reversible error for a court to refer issues to a referee for trial when not authorized by the statute. Caulk v. Blyth, 55 Mo. 293; Creve Coeur Lake & Ice Co. v. Tamm, 138 Mo. 385, 39 S.W. 791; Klingenberg v. Davis, 219 Mo.App. 1, 268 S.W. 99; Thornton v. Life Association of America, 7 Mo.App. 544. All of these cases, except Caulk v. Blyth, pertain to law cases, and the conclusion is reached on the basis that a reference not authorized by the statute deprives the objecting party of his constitutional right of trial by jury. But Constitution of Mo. § 14, Art. V, provides that the "circuit courts shall have * * * exclusive original jurisdiction in all civil cases not otherwise provided for, * * *" and we think this means that in any particular case when there is no provision for trial other than by the circuit court the parties are entitled to try their case before the court, and that they cannot be compelled over their objection to try the case before a referee. Prejudicial error to the appellants resulted in that they were deprived of the right to have the duly qualified judge pass upon the credibility of the witnesses as distinguished from a person who had no standing in our judicial system to conduct a trial of this cause of action in equity over the objections of the appellants. This prejudice is not and cannot be removed by the fact that the report of the referee was reviewed by the trial judge upon exceptions thereto. That part of the judgment in this case based on count III of the amended petition must be reversed and remanded for trial before the only duly constituted agency provided for that purpose, namely the circuit court.

By count II of the amended petition plaintiff sought a declaratory judgment that the appellants had no interest in the result of a different lawsuit pending in the federal district court. This was a separate and distinct cause of action. On the day this cause of action was made a part of the petition, and almost two weeks before the defendants named therein filed an answer, the trial court ordered a reference. At that time there was nothing at issue. The nature of the proceeding, as one for compulsory reference or otherwise, is to be determined from the issues raised by the parties as shown by the pleadings when the order of reference is made. Hancock v. State Highway Commission, 347 Mo. 944, 149 S.W.2d 823; Vannoy v. Swift & Co., 356 Mo. 218, 201 S.W.2d 350. This order of reference was premature, but if the issues subsequently raised would have authorized a reference no prejudice could have resulted from this fact alone. However, after the issues were made there was no issue of fact the trial of which would require the examination of a long account, and the reference was not authorized. In this situation a reversal of that part of the judgment based on this cause of action would ordinarily be required. But as will subsequently be noted a judgment on the pleadings would have been authorized. Nothing useful would be gained by remanding this cause of action.

Appellants next challenge the trial before a referee of all the issues in count IV of the amended petition. This count had no counterpart in the pleadings prior to the filing of the amended petition. It is true that plaintiff contends that a pleading entitled "Answer to Joint Separate Supplemental Cross-petition of Defendants Dubinsky" should have been entitled "Answer and *Cross-Petition* * * *", but the allegations therein did not purport to do more than set up an equitable defense to the cross petitions of appellants. There was no specific request for a constructive trust, and a reading of this pleading would not impart the idea that a constructive trust was being requested. The referee heard the only evidence pertaining to a constructive trust. However, assuming that what plaintiff contends should have been designated as an "answer and cross petition" contained a sufficient statement of a cause of action for a constructive trust, the trial court had no authority to refer that entire cause of action to a referee for trial.

The first two subsections of Section 515.-020, pertaining to compulsory reference, are as follows: "Where the parties do not so consent, [to the trial of any or all of the issues of fact by a referee pursuant to Section 515.010] the court may, upon the application of either, or of its own motion, direct a reference in the following cases: (1) Where the trial of an issue of fact shall require the examination of a long account on either side, in which case the referees may be directed to hear and decide the whole issue, or to report upon any *specific question of fact involved therein*; or (2) Where the taking of an account shall be necessary for the information of the court, before judgment, or for carrying a judgment or order into effect; * * *." Plaintiff's position is that the "whole issue" embraces every issue within the petition including all the issues in each count thereof. We have found no Missouri case defining "the whole issue" as used in this statute. However, the compulsory reference statute of the State of California is in substance the same as that of Missouri. In Williams v. Benton, 24 Cal. 424, a suit was brought in equity to dissolve a partnership and obtain a settlement of the accounts. A compulsory reference was ordered. The following language of the Supreme Court of California is particularly in point: "The power of the court to compel a reference is derived from * * * [the compulsory reference statute], and can be exercised only as therein provided. The first subdivision of that section is the one relied on by the respondent as authorizing the order in question, and is in the following language, viz.: 'When the trial of an issue of fact requires the examination of a long account on either side—in which case the

referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein'—a reference may be ordered. The word 'issue' is used twice, and each time in the singular number, and no other issue is mentioned than such as requires the examination of a long account, * * *. If there be but one issue in the action, and that issue involves the examination of a long account, the whole case may be sent to a referee; * * * If, however, there are other issues in the case, not involving the examination of a long account, the court has no compulsory power to send them to a referee for trial. The character of the issue which may be referred is particularly described, and, by necessary implication, all issues not answering to that description are excluded from the operation of the section. The language is not that the court may refer all the issues involved in the action, nor that the referee may be directed to try all the issues, but merely that he may try the whole issue—that is to say, the issue already spoken of, and the reference of which has been already authorized." See Fredenhall v. Shrader, 45 Cal.App. 719, 188 P. 580 and Barker Bros., Inc., v. Coates, 211 Cal. 756, 297 P. 8. Conceding that there are a few Missouri cases in which the general language used implies that the whole cause of action may be referred, they are cases wherein the determination of the issue involved in the long account determined the lawsuit.

In the pending cause of action for a constructive trust we have first the question whether or not under the law, as applied to the facts, plaintiff was entitled to have a court of equity impose a constructive trust on any property or earnings of the appellants. That issue in no way involved the examination of a long account. It was the principal issue of the cause of action and was not incident to the taking of a long account. The appellants were entitled to have this principal issue tried by the duly constituted court designated by the constitution and statutes for the trial of such issues. Assuming the trial court determined that no constructive trust should be imposed, no further action would be required. However, if it determined to impose a constructive trust, subsection (2) of Section 515.020 authorizes the appointment of a referee for the purpose of taking an account to determine, for the information of the court before judgment, upon what property or earnings a constructive trust should be imposed. The obvious purpose of this second subsection is to provide for the exact situation we have here, and we cannot conceive that it was incorporated into the statute by accident.

The result here reached finds support in the decisions of other states. In Hilton v. Hughes, 5 App.Div. 226, 39 N.Y.S. 204, 205, the suit was in equity. Plaintiff charged a violation of a fiduciary relationship and prayed for an accounting and other affirmative relief. The court held that a compulsory reference of all the issues was not authorized by the statute and stated: "The examination of *any* account was dependent upon the determination of the question whether the relations of the parties were those of principal and agent or not; whether the wrongful acts alleged were committed by the defendant or not. The court should itself have determined this question, and, if its determination was such as to require such an accounting, the court might then order a reference to take such account." See also O'Connor v. O'Connor, 202 App.Div. 7, 195 N.Y.S. 308; Leigh v. Wasey, 259 App.Div. 594, 20 N.Y.S.2d 301; Starr v. Selleck, 138 App.Div. 277, 122 N.Y.S. 1054; Fisher v. Tuttle, 164 App.Div. 216, 149 N.Y.S. 673; 34 Cyc.References § 2f; 76 C.J.S., References, § 22b; 45 Am.Jur.References § 15. This procedure is not strange to the Missouri practice. See State ex rel. Webster v. Johnson, 132 Mo. 105, 33 S.W. 781; Vette v. Geist, 155 Mo. 27, 55 S.W. 871; and Campbell v. Boyers, 241 Mo. 421, 145 S.W. 807, where that procedure was followed.

That part of the judgment pertaining to the imposition of a constructive trust must be reversed and the cause of action

remanded for trial before the circuit court, which may, if a constructive trust is imposed, in its discretion if warranted, appoint a referee pursuant to subsection (2) of Section 515.020.

Turning now to the matters on appeal pertaining to the merits of the original petition (count I of the amended petition) we ·find that the only assignment of error is that the court erred in not ruling that plaintiff made actual sales of all of the theaters. No contention is made that the amounts determined to be owing by plaintiff to each appellant are improper if the court reached the correct conclusion concerning the question of actual sales.

■ At the time of the execution of the contract of December 7, 1946 the titles to three theaters were in three separate corporations and the title of a fourth was in the name of Stanley H. Durwood, plaintiff's son. Appellants make no reference to any testimony or exhibit showing any subsequent change in these titles or in the ownership of the corporate stocks, and there is no contention in their briefs that such changes occurred. We cannot determine on what basis appellants could possibly contend that the court erred in ruling that there was no actual sale of these four theaters. The titles to four other theaters were in plaintiff's name, and the title to another theater was held by a corporation other than those previously mentioned. Plaintiff transferred the titles of these four theaters and all the stock of this corporation to his children. The trial court held in accord with appellants' contentions that these transactions constituted actual sales, and the compensation of appellants was ·figured accordingly. This leaves for determination only the question of whether there occurred actual sales of the remaining four theaters. The titles to these theaters were in plaintiff's name when the contract was signed. Shortly thereafter plaintiff organized four new corporations, and he transferred the title of each of these theaters to a different corporation. Plaintiff was president of each corporation, and he retained ownership of 25% of the total outstanding stock of each, the remaining stock being owned by his children. The trial court held that there was no actual sale of these four theaters.

■ When we read the whole contract, and take into consideration the reasons for its various provisions, including the one pertaining to "actual sales" of the theaters, as disclosed by the evidence, and also take into consideration that when the contract was signed plaintiff did not have actual title to five of the theaters, we must conclude that there was no intention that if plaintiff did not retain actual title to the remaining theaters an "actual sale" would necessarily occur. In fact the contract provided that the plaintiff could transfer, operate and handle the various theatrical properties as he saw fit. It is obvious that by the use of the term "actual sale" the parties had in mind only a sale which would transfer the theaters beyond the actual control and management of plaintiff. This did not occur in respect to these four theaters. Although there was extreme bitterness between plaintiff and the Dubinsky brothers, it is evident that the Dubinsky brothers were to rely on and benefit from plaintiff's executive and managerial ability. As to these last four theaters, plaintiff retained actual management, and although he transferred record title of the theaters to separate corporations and transferred 75% of the beneficial ownership to his children, he in fact retained the actual control of the operations. He was in a position to and did make available the books and accounts of these theaters. Appellants do not contend that by reason of the transfers plaintiff lost any incentive to or did not devote his best efforts and talents to producing an income therefrom. Only he and his children owned any interest in the theaters, and each theater remained an equal member of the Durwood "theater circuit." No "stranger" entered into the ownership, management or control. While there is no question that a sale took place in one sense of the term, when the whole contract is read and the intent of the parties is taken into consideration, the above referred

to transfers of these four theaters did not constitute an "actual sale" within the meaning of that term as used in the contract, and as to these four theaters appellants' compensation was properly computed on the net profits earned during the period of employment.

In this connection it is interesting to note that prior to the filing of this suit plaintiff took the position that an actual sale of some of the theaters had occurred, and the appellants took the opposite position. After this litigation had progressed for quite some time each side completely reversed its position. The only significance to be attached is that this about-face by the parties occurred after the auditors had started to examine plaintiff's books, and apparently it was discovered that if there were actual sales plaintiff would owe appellants more money than if there were no actual sales.

The remaining question pertains to the cause of action for a declaratory judgment alleged in count II. This action pertained to the interest of the appellants in the proceeds of a separate, and different suit brought by Edward D. Durwood against certain film companies for treble damages for alleged violation of the anti-trust laws. Appellants admitted in their answer that they had no interest in that suit if there had been an actual sale of the Roxy Theater. One of the issues in count I was whether there had been an actual sale of that theater, and the trial judge found, in accord with the then contention of the appellants, that there had been an actual sale. Therefore, as to count II the trial judge could have entered judgment for plaintiff on the pleadings, and that part of the judgment based on count II that the appellants have no interest in or claim to the proceeds of the suit in the federal court is affirmed.

The judgment in this case pertaining to counts I and II is affirmed, and for the reasons hereinbefore set out, that part of the judgment pertaining to counts III and IV is reversed, and the two causes of action alleged in said counts are remanded for further proceedings in accord with this opinion.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.

On Motions for Rehearing and to Modify

PER CURIAM.

Plaintiff contends in his motion for rehearing that the Dubinsky brothers never demanded a trial by the judge and therefore cannot raise this question for the first time on appeal. When the original order of reference was made, the defendants, other than Commerce Trust Company, objected thereto because the reference was not authorized by Section 515.020. We held in the principal opinion that the reference of counts III and IV was not authorized, and the *reason* that such unauthorized reference was prejudicial was because the objecting parties were denied a trial of the issues by the judge. In the answer to the amended petition, where count III was first so designated and count IV was first made a part of the petition, the defendants named in these two counts preserved all "protests and objections heretofore made of record," one of which was that there was no authority for the reference. In the motions for new trial it was contended that there was no authority for the reference and that the movants were "entitled to a trial by the court, and not before a referee, of the issues tendered by counts III and IV." It it also noted that Section 515.010 provides that all or any of the issues of fact in an action may be referred "upon the written consent of the parties", and that Section 515.020 provides for reference without written consent in only three situations.

These two sections provide the only method whereby any issue of fact may be referred. It is not contended that there was any consent in writing to the reference. The defendants named in counts III and IV preserved throughout their objection to the reference on the ground that it was not authorized by Section 515.020, and they did nothing whereby it could be contended that they waived the requirement that the consent be in writing.

Plaintiff also contends for the first time in his motion for rehearing that the authority of a court to refer any suit in equity to a referee is contained in Section 1.010, RSMo 1949, V.A.M.S. That section provides that "The common law of England and all statutes and acts of parliament made prior to the fourth year of the reign of James the First, and which are of a general nature, * * * not repugnant to or inconsistent with * * * the constitution of this state, or the statute laws in force for the time being, shall be the rule of action and decision in this state, any custom or usage to the contrary notwithstanding, but no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that the same may be in derogation of, or in conflict with, such common law, or with such statutes or acts of parliament; but all such acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." Plaintiff cites State ex rel. South Missouri Pine Lumber Company v. Dearing, 180 Mo. 53, 79 S.W. 454. It is there stated that by reason of this statute the circuit courts are invested with the powers of an English Court of Chancery *except so far as those powers may have been limited by statute.* Other cases hold that these powers can be divested "by express legislative enactment", State ex rel. and to use of Kenney v. Johnson, 229 Mo.App. 16, 68 S.W.2d 858, 860, by a legislative act "directly and irreconcilably opposed thereto in terms", State v. Dalton & Fay, 134 Mo.App. 517, 114 S.W. 1132, 1136, or by "express enactment or by inexorable implication", Arnett v. Williams, 226 Mo. 109, 125 S.W. 1154, 1157. The principal opinion was based upon the theory that a court of equity at common law did not require or need legislative authority to order a reference to a master in chancery of any issue in a case, but that now the power of a court of equity in Missouri to refer issues to a referee has been expressly limited by statute to the situations provided for in Chapter .515, notwithstanding the rule at common law, and we adhere to that view. The other matters raised in the motion for rehearing do not require additional comment.

Appellants have filed a motion to modify the opinion, and they urge that their objections to venue should have been sustained. When the original petition was filed objection to venue was made for the reason that the petition did not state a cause of action against Commerce Trust Company and because the petition did not state a joint cause of action against all the defendants. The first objection was disposed of in the principal opinion. In support of the second objection appellants cite State ex rel. Thompson v. Terte, 357 Mo. 229, 207 S.W.2d 487, and State ex rel. C. H. Atkinson Paving Company v. Aronson, 345 Mo. 937, 138 S.W.2d 1. These cases, upon first reading, appear to support appellant's position, but in State ex rel. Campbell v. James, Mo.Sup., 263 S.W.2d 402, this court had this exact question before it and held that in order to obtain jurisdiction and venue pursuant to Section 508.010, RSMo 1949, V.A.M.S., it was not a requirement that a joint cause of action be stated against all defendants. See also State ex rel. Baker v. Goodman, 364 Mo. 1202, 274 S.W.2d 293.

Appellants also point out that we did not rule on the contention that no cause of action was stated in count IV of the

amended petition pertaining to the constructive trust. It is recalled that count IV first came into existence after the hearing before the referee had been concluded. In view of this unusual procedure all questions other than the validity of the reference are expressly not ruled so that the normal and usual trial court procedures pertaining to count IV may be followed.

Appellants also suggest that this court re-allocate costs in the trial court. This is a matter the trial court should pass on originally.

Respondent's motion for rehearing or in the alternative to transfer to the court en banc and appellants' motion to modify are overruled.